2007-NMSC-039

163 P.3d 494

**STATE of New Mexico, Plaintiff–Respondent.**

v.

**Stanley GROGAN, Defendant–Petitioner.**

**No. 29,513.**

Supreme Court of New Mexico.

June 27, 2007.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Petitioner.

Gary K. King, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

MAES, Justice.

{1} After a jury trial in which Defendant Stanley Grogan was convicted of two counts of great bodily harm by vehicle, the trial court, on its own motion, ordered a new trial based on its determination that Defendant

did not receive a fair trial due to ineffective assistance of counsel and prosecutorial misconduct. The Court of Appeals held that the trial court abused its discretion in ordering a new trial without holding an evidentiary hearing to allow the State an opportunity to rebut the allegations of ineffective assistance of counsel. We reverse the Court of Appeals and hold that the trial court did not abuse its discretion when it ordered a new trial on its own motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Stanley Grogan (Defendant) was charged with one count of vehicular homicide and two counts of great bodily harm by vehicle contrary to NMSA 1978, § 66–8–101 (2004), following an accident that killed his girlfriend and severely injured her two children. Defendant claimed that their cat crawled under his feet as he was driving, and when he reached down to try and catch it, he lost control of the vehicle. Police investigators at the scene found alcoholic beverage containers and suspected that Defendant was impaired. The investigators obtained a search warrant for Defendant's initial toxicology report and for blood and urine samples taken from Defendant at University Medical Center (UMC), where he was transported after the accident. The toxicology report from UMC indicated that Defendant's urine contained cocaine, amphetamine, and opiates. The presence of opiates was later attributed to the morphine that was administered to Defendant at the scene of the accident. The toxicology report from the hospital did not quantify the amounts of the drugs in Defendant's system. The urine and blood samples were also sent to the New Mexico Scientific Laboratory Division (the SLD) for retesting. The report from the SLD confirmed the UMC results and identified the source of the amphetamine as methamphetamine, but, like the UMC test, did not quantify the amounts of the drugs in Defendant's urine. The SLD did not find cocaine or methamphetamine in Defendant's blood, only his urine.

{3} Defendant hired his own expert to test his blood and urine, and listed this expert as an anticipated witness before learning the results of the test or receiving a copy of the report. This test, like the tests from UMC and the SLD, revealed that Defendant's urine contained cocaine and methamphetamine, but also quantified the amounts. On the second day of Defendant's trial, Defendant's attorney decided not to call the defense expert as a witness. The State had already subpoenaed the defense expert and, over defense counsel's objection, was allowed to call the expert as a witness for the prosecution. The State also introduced the expert's report into evidence.

{4} At trial, Defendant argued that although cocaine and methamphetamine were found in his urine, he was not under the influence of these drugs at the time of the accident because he had ingested the drugs four days earlier. However, the defense expert testified that the quantity of methamphetamine in Defendant's urine was in excess of the testing range. The expert stated that, in his opinion, this indicated large amounts of the drug were ingested within twelve hours of the collection of the urine, and Defendant would have still been under the effects of the drug at the time of the accident.

{5} The jury found Defendant guilty of two counts of great bodily harm by vehicle, but could not reach a verdict on the charge of vehicular homicide. Following the return of the verdict, the trial court, on its own motion, entered an order granting Defendant a new trial. The trial court based its order on the following findings:

1. Defense counsel's failure to secure and review his own expert's opinion before permitting the expert to write the report that was disclosed to the State;

2. Defense counsel's failure to move for a mistrial when the prosecutor referred to Defendant as a "criminal defendant";

3. Defense counsel's failure to move for a mistrial after three separate incidents when the prosecutor sought to have the jury consider inadmissible evidence;

4. Defense counsel's failure to move for a mistrial when the prosecutor brought one of the children into the courtroom in a wheelchair during closing arguments;

5. Defense counsel's failure to explore alternative reasons for the accident through cross-examination; and

6. Defense counsel's failure to submit a jury instruction for the lesser-included offense of careless driving (Defendant's theory of the case).

{6} The State appealed the district court's order for a new trial. In a Memorandum Opinion, the Court of Appeals reversed and remanded, holding that an evidentiary hearing on the ineffective assistance of counsel claim should have been held before the trial court ordered a new trial on its own motion. *State v. Grogan*, No. 25,699, slip op. at 1, 3 (N.M.Ct.App. Oct. 11, 2005). Defendant filed a Petition for a Writ of Certiorari in this Court and argues that the Court of Appeals erred by remanding for an evidentiary hearing and should have deferred to the trial court's order for a new trial. We granted certiorari to decide whether the trial court abused its discretion in ordering a new trial without holding an evidentiary hearing.

## II.  DISCUSSION

### A.

■ {7} When a defendant has been found guilty, the court on its own motion may grant a new trial, "if required in the interest of justice." Rule 5–614 NMRA. We defer to the trial court's decision to order a new trial absent a "clear and manifest abuse of discretion." *State v. Chavez*, 98 N.M. 682, 683, 652 P.2d 232, 233 (1982) (quoting *State v. Pope*, 78 N.M. 282, 283, 430 P.2d 779, 780 (Ct.App. 1967)).

{8} The Court of Appeals in the present case held that because the trial court's order for a new trial was based on findings of ineffective assistance of counsel, the trial court abused its discretion by ordering a new trial without giving the State the chance to rebut the allegations of ineffective assistance. *Grogan*, No. 25,699, slip op. at 2–3. This case is obviously different than most cases, where the defendant brings a claim of ineffective assistance of counsel on appeal. The distinction, and the critical factor in this case, is that the trial court judge himself, after sitting through the entire trial, determined that Defendant was denied effective assistance of counsel. Therefore, the question is whether the trial court abused its discretion by finding ineffective assistance of counsel without holding an evidentiary hearing. This is an issue of first impression in New Mexico.

### B.

■ {9} New Mexico appellate courts frequently remand claims of ineffective assistance of counsel brought on direct appeal for further evidentiary hearings. *State v. Hunter*, 2006–NMSC–043, ¶ 30, 140 N.M. 406, 143 P.3d 168. "[H]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *Id.* (internal quotation marks and citation omitted). Thus, we have held that an evidentiary hearing in most cases "may be necessary." *Id.* (internal quotation marks and citation omitted).

{10} Most ineffective assistance of counsel claims are raised on appeal after conviction. Thus, "the jurisprudence on ineffective assistance of counsel does not address the trial court's responsibility for preventing violations of defendants' Sixth Amendment rights." Galia Benson–Amram, *Protecting The Integrity Of The Court: Trial Court Responsibility For Preventing Ineffective Assistance Of Counsel In Criminal Cases*, 29 N.Y.U. Rev. L. & Soc. Change 425, 428 (2004). Cases with visibly poor representation at the trial pose a risk to the integrity of the judicial system, in addition to harming the individual defendant. *Id.* at 429 (when "attorney incompetence is so obvious that a trial judge is or should be aware of the threat to the defendant's Sixth Amendment right to counsel" the integrity of the judicial system is at risk). Allowing trial judges to assess attorney performance would alleviate appellate courts from trying to "reconstruct the circumstances" of counsel's conduct, attempting to evaluate counsel's conduct at the time, and dealing with the effects of that conduct without the "distorting effects of hindsight." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We hold that in cases of obvious ineffective assis-

tance of counsel, the trial judge has the duty to maintain the integrity of the court, and thus inquire into the representation.

{11} Normally, a claim of ineffective assistance of counsel is established by a showing of error by counsel and prejudice resulting from the error. *State v. Bernal,* 2006–NMSC–050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (citing *Strickland,* 466 U.S. at 690, 692, 104 S.Ct. 2052). An error is found if the "attorney's conduct fell below that of a reasonably competent attorney." *State v. Baca,* 1997–NMSC–059, ¶ 24, 124 N.M. 333, 950 P.2d 776. The defendant has the burden to show both incompetence and prejudice. *Id.*

{12} There are exceptions to this rule where defendants are relieved of the burden of establishing prejudice due to "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *U.S. v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The *Cronic* court described three such circumstances: (1) denial of counsel altogether; (2) defense counsel's failure "to subject the prosecution's case to meaningful adversarial testing"; and (3) when the accused is "denied the right of effective cross-examination." *Id.* (internal quotation marks and citation omitted).

{13} Presumption of prejudice has also been applied in conflict of interest cases. In *Holloway v. Arkansas,* 435 U.S. 475, 477, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), one attorney was appointed to represent three defendants on charges of robbery and rape. The attorney filed a motion to appoint separate counsel for each defendant based on a potential conflict of interest, which the court denied. *Id.* The attorney renewed the motion at trial before the jury was empaneled " 'on the grounds that one or two of the defendants may testify and, if they do, then I will not be able to cross-examine them because I have received confidential information from them.' " *Id.* at 478, 98 S.Ct. 1173. The court again denied the motion. *Id.* All three defendants were convicted on all counts. *Id.* The U.S. Supreme Court reversed, finding that prejudice is presumed where a trial court improperly permits or requires joint representation. *Id.* at 489–91, 98 S.Ct. 1173. The

Court stated that requiring defendants in such cases to show prejudice "would not be susceptible of intelligent, evenhanded application." *Id.* at 490, 98 S.Ct. 1173. The Court determined that the failure of the trial court to inquire into the conflict raised by counsel denied the defendants' Sixth Amendment right to assistance of counsel. *Id.* at 484, 98 S.Ct. 1173. Thus, *Holloway* also established that when a trial court is alerted to a conflict of interest, it has a duty to inquire about that conflict.

{14} In *Cuyler v. Sullivan,* 446 U.S. 335, 337, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), two privately retained attorneys represented three defendants. The attorneys did not object to the multiple representation, nor did the defendants. *Id.* at 337–38, 100 S.Ct. 1708. The jury found Sullivan guilty and sentenced him to life imprisonment. *Id.* at 338, 100 S.Ct. 1708. The U.S. Supreme Court held that when a defendant raises no objection to multiple representation, he must show that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. 1708. The Court also held that the trial court has no duty to inquire about potential conflicts unless the court "knows or reasonably should know that a particular conflict exists." *Id.* at 347, 100 S.Ct. 1708. The defendant has to show an actual conflict, but not actual prejudice, as required in most cases of ineffective assistance of counsel. *Id.* at 348, 100 S.Ct. 1708.

**C.**

{15} While the *Strickland* test for determining claims of ineffective assistance of counsel on appeal places a burden on the defendant to show prejudice in addition to incompetence, this standard is inappropriate in cases where the trial court witnesses obvious incompetence. Benson–Amram, *supra,* at 450. The *Holloway* standard of presumed prejudice provides "a better fit for egregious ineffectiveness cases." *Id.* "[W]hen a lawyer is ineffective, not because of a conflict-of-interest but because of her own failings, it is unreasonable to base a defendant's burden of proof for proving ineffectiveness on whether her ineffective lawyer objected to her own ineffectiveness." *Id.* at 456. Applying *Hol-*

*loway* to such cases requires that when a trial court witnesses gross or obvious incompetence, it should inquire into the attorney's actions in order to protect the defendant's right to effective assistance and to protect the integrity of the court. *Id.* We hold that the defendant does not have to show prejudice because it is presumed. Additionally, because the trial court inquires into the conduct immediately, a separate evidentiary hearing may be unnecessary. *See Hunter*, 2006–NMSC–043, ¶ 30–31, 140 N.M. 406, 143 P.3d 168 (remanding with directions to permit a plea to be withdrawn on the basis that a sufficient showing of prejudice had been made so that an evidentiary hearing on ineffective assistance was not required).

{16} In the present case, the court listed six instances it perceived to be ineffective assistance of counsel that supported the court's finding that Defendant was denied a fair trial. Because the trial court issued the order on its own motion, the question becomes whether the State should have an opportunity to respond. Ordinarily the answer would be in the affirmative. When a trial judge believes a defendant has not received effective assistance of counsel and thereby feels compelled to *sua sponte* grant defendant a new trial, the parties should first be informed of the judge's specific concerns. This should be done on the record before granting the new trial. This procedure will afford the prosecution a fair opportunity to respond to the court's concerns and to make any necessary offers of proof prior to the *sua sponte* ruling. However, for the reasons described below, the prosecution has not persuaded us that such a procedure was necessary because prejudice was manifest in this case. Indeed, as stated in the dissent, this case is *sui generis*.

{17} The first reason listed by the trial court was Defense counsel's failure to secure and review his own expert's opinion before permitting the expert to write the report. We conclude that this action constituted such obvious attorney incompetence, it cannot be rebutted. The report, and perhaps more importantly the expert's testimony at trial, were undoubtedly the most damaging pieces of evidence presented.

The report quantified the amount of methamphetamine in Defendant's urine, which neither of the State's reports had done, and the defense expert testified that because the report showed that such large amounts of the drug had been ingested very recently, Defendant would have still been under the effects of the drug at the time of the accident. We find no merit in the State's argument that the disclosure of the report may have been intentional due to trial tactics or strategy. We do not know what good faith response might have been made to the defense lawyer turning over the inculpating expert report to the State. It could not be strategic since a defense strategy is not to prove a client's guilt; strategy is usually to prove innocence or some lesser included offense. While the lawyer was arguing for a lesser included offense in this case, he also neglected to ask for the very instruction that would have permitted the jury to find Defendant guilty of something less than great bodily harm by vehicle. Defense counsel tried to prevent the State from questioning the defense expert at trial by arguing at a bench conference that the defense was not notified of the State's intention to call the defense expert as a witness. The State also asserts that because defense counsel was required to disclose his list of witnesses ten days prior to trial and the expert had not completed the tests by this time, counsel was not at fault. However, the record shows that defense counsel did not even request the release of Defendant's urine and blood until two to three weeks before trial. Thus, any delay in receiving the expert's results was due to defense counsel's failure to request the tests in a timely manner. *Cf. State v. Mascarenas*, 84 N.M. 153, 155, 500 P.2d 438, 440 (Ct.App.1972) (stating that where a defendant claims he was denied the right to a speedy trial, he may not complain if he "causes or contributes to the delay").

{18} The State argues that, at most, the disclosure of the report presents a prima facie case of ineffective assistance that requires a remand to the trial court for an evidentiary hearing. Remanding for a hearing is usually necessary because the claim of

ineffective assistance is brought on appeal, and thus, the trial court did not have a chance to rule on the issue. In *State v. Paredez*, this Court stated that "[i]n past cases, we have held when the record does not contain all the facts necessary for a full determination of the issue, 'an ineffective assistance of counsel claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.'" 2004–NMSC–036, ¶ 22, 136 N.M. 533, 101 P.3d 799 (quoting *State v. Roybal*, 2002–NMSC–027, ¶ 19, 132 N.M. 657, 54 P.3d 61). Defendant asserts that the reason that this Court in *Paredez* remanded the case for a hearing was because the district court did not have a chance to consider the claim of ineffective assistance of counsel, and that because the trial court in the present case did have a chance to consider the claim, a hearing seems unnecessary. We agree. The trial court in the present case specifically and thoroughly discussed defense counsel's gross ineffectiveness in its findings supporting the order for the new trial. We find the record provides a sufficient showing of prejudice. The State has failed to convince us that a hearing is necessary. We hold that the trial court did not abuse its discretion by finding ineffective assistance of counsel without holding an evidentiary hearing.

{19} The trial court listed five other instances of ineffective assistance of counsel. However, because we find the instance discussed above was obvious ineffectiveness, we do not discuss the other instances listed by the trial court. We reiterate that our review only consists of determining whether the trial court abused its discretion in ordering a new trial.

## III.  CONCLUSION

{20} We hold that the trial court did not abuse its discretion in ordering a new trial. Accordingly, we reverse the Court of Appeals and reinstate the trial court's order for a new trial.

{21} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, RICHARD C. BOSSON, Justice.

PAMELA B. MINZNER, and PATRICIO M. SERNA, Justices (dissenting).

MINZNER, Justice (dissenting).

{22} I respectfully dissent. I agree with the Court of Appeals that the trial court should have inquired into defense counsel's perceived ineffectiveness. The trial court should not have sua sponte ordered a new trial without first giving the State an opportunity at an evidentiary hearing to counter the trial judge's impressions that Defendant's counsel was ineffective.

{23} The Court of Appeals, in a Memorandum Opinion, held "that the trial court, before sua sponte entering its order for new trial, should have first held a hearing to allow the State an opportunity to rebut the allegations of ineffective assistance of counsel." *State v. Grogan*, No. 25,699, slip op. at 3 (Ct.App. Oct. 11, 2005). I agree. I cannot imagine a case requiring a ruling by the district court in which both sides are not allowed the opportunity to present an argument and, if relevant, evidence to support their argument; such an opportunity seems essential to due process. *See State v. Baca*, 1997–NMSC–059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("'[I]neffective assistance usually can be reached only after an adversarial proceeding exploring the reasons for the action or inaction of defense counsel.'") (quoting *State v. Richardson*, 114 N.M. 725, 730, 845 P.2d 819, 824 (Ct.App.1992)). Thus, the State should be given the chance to "elicit testimony from defense counsel that any perceived shortcoming were instead part of legitimate trial strategy and tactics." *Grogan*, slip op. at 3; *see State v. Reyes*, 2002–NMSC–024, ¶ 45, 132 N.M. 576, 52 P.3d 948 (noting the trial court held such an evidentiary hearing to review claims of ineffective assistance of counsel raised by the defendant in a motion shortly after trial).

{24} This Court has long adhered to the standard put forth by the United States Supreme Court in *Strickland v. Washington*, which set forth a two-prong test for deter-

mining a violation of the Sixth Amendment right to effective counsel: "the defendant must show that counsel's performance was deficient" and "the defendant must show that the deficient performance prejudiced the defense." 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see, e.g., State v. Roybal,* 2002–NMSC–027, ¶ 19, 132 N.M. 657, 54 P.3d 61; *Lytle v. Jordan,* 2001–NMSC–016, ¶ 25, 130 N.M. 198, 22 P.3d 666. "Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *Reyes,* 2002–NMSC–024, ¶ 48, 132 N.M. 576, 52 P.3d 948; *see State v. Baca,* 1997–NMSC–045, ¶ 21, 124 N.M. 55, 946 P.2d 1066. Defense counsel's performance is deficient if his " 'representation fell below an objective standard of reasonableness.' " *Lytle,* 2001– NMSC–016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). It seems fair to say, in the present case, that defense counsel's performance fell below the reasonable standard, thus establishing a prima facie case of ineffective assistance. *State v. Swavola,* 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.1992). However, even if Defendant can show his counsel's performance fell below that of a reasonably competent attorney, he must also show that his counsel's perceived failure(s) "prejudiced his defense such that there was a reasonable probability that the outcome of the trial would have been different." *State v. Torres,* 2005–NMCA–070, ¶ 18, 137 N.M. 607, 113 P.3d 877 (internal quotation marks and citation omitted). Under *Strickland,* "mere evidentiary prejudice" is insufficient. *Roybal,* 2002–NMSC–027, ¶ 25, 132 N.M. 657, 54 P.3d 61. "Counsel's deficient performance must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *Id.*

{25} The trial court ordered a new trial, sua sponte, based on six instances of what it perceived to be ineffective assistance of counsel: (1) defense counsel's failure to secure and read his own expert's opinion before permitting the expert to write the report that was disclosed to the State; (2) defense counsel's failure to move for a mistrial when the prosecutor referred to Defendant as a "criminal defendant"; (3) defense counsel's failure

to move for a mistrial after the prosecutor sought to have the jury consider inadmissible evidence on three separate occasions; (4) defense counsel's failure to move for a mistrial when the prosecutor brought one of the children into the courtroom in a wheelchair during closing arguments; (5) defense counsel's failure to explore alternative reasons for the accident through cross-examination; and (6) defense counsel's failure to submit jury instructions for the lesser included offense of careless driving. Yet, the majority ultimately holds that "[d]efense counsel's failure to secure and review his own expert's opinion before permitting the expert to write the report ... constituted such obvious attorney incompetence, it cannot be rebutted," concluding the other five instances need not be discussed. Maj. Op. ¶¶ 16, 17. I think, at the very least, all of the trial court's findings regarding defense counsel's actions during Defendant's trial should be considered.

{26} Perhaps this case is sui generis. That is, perhaps this is a case reflecting such egregious mistakes on defense counsel's part, that Defendant is entitled to a new trial based solely on the trial court's sua sponte order. In *State v. Buchanan,* this Court recognized there might be exceptions to the need for an evidentiary hearing on issues that could be resolved based on the trial judge's personal observations. 78 N.M. 588, 590–91, 435 P.2d 207, 209–10 (1967). However, I continue to think such a determination should follow an evidentiary hearing or stipulated facts or a combination of stipulated facts and a hearing. Such a process allows both parties to participate in a meaningful way and ensure the utmost fairness in criminal trials while seeking to protect the rights of criminal defendants.

{27} The majority opinion holds, "that in cases of obvious ineffective assistance of counsel, the trial judge has the duty to maintain the integrity of the court, and thus *inquire* into the representation." Maj. Op. ¶ 10 (emphasis added); *see* Galia Benson–Amram, *Protecting the Integrity of the Court: Trial Court Responsibility for Preventing Ineffective Assistance of Counsel in Criminal Cases,* 29 N.Y.U. Rev. L. & Soc. Change 425, 429 (2004). The majority then goes on to

affirm the trial court, reverse the Court of Appeals, and reinstate the trial court's order for a new trial. Maj. Op. ¶ 19. The trial court did not *inquire* into defense counsel's perceived deficiencies; it sua sponte ordered a new trial without giving the State the opportunity to participate in any way. Thus, at a minimum, the trial court failed to conduct the inquiry which the majority opinion states it had a duty to conduct.

{28} A showing of a prima facie case of ineffective assistance of counsel necessitates a hearing on the issues, as has been our rule in New Mexico. My colleagues being of a different view, I respectfully dissent.

I CONCUR: PATRICIO M. SERNA, Justice.