This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**MICHAEL COX,**
**Defendant-Appellant.**

Docket No. A-1-CA-35997
COURT OF APPEALS OF NEW MEXICO
May 30, 2019

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY, Jerry H. Ritter, Jr., District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Laurie Blevins, Assistant Attorney General, Albuquerque, NM for Appellee

Bennett J. Baur, Chief Public Defender, Allison H. Jaramillo, Assistant Appellate Defender, Santa Fe, NM for Appellant.

**JUDGES**

M. MONICA ZAMORA, Chief Judge. WE CONCUR: JACQUELINE R. MEDINA, Judge ZACHARY A. IVES, Judge

**AUTHOR:** M. MONICA ZAMORA

**MEMORANDUM OPINION**

**M. ZAMORA, Chief Judge.**

**{1}** Michael Cox (Defendant) appeals his conviction for second-degree criminal sexual contact of a minor (CSCM) under 13 years of age, contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). Defendant raises six issues: (1) insufficient evidence; (2) improper admission of the Victim's prior consistent statements; (3) improper admission of lay testimony regarding the Victim's change in behavior after the CSCM and not

allowing Defendant to rebut this testimony with evidence of the Victim's medical history; (4) improper denial of Defendant's motion for new trial; (5) cumulative error; and (6) ineffective assistance of counsel. We affirm.

**{2}** Defendant's conviction was based in part on testimony that he touched his then-girlfriend's five-year-old daughter (Victim) on her vagina on July 7, 2014. Victim testified to the following events at trial. Victim and Defendant, who was her mother's (Mother) boyfriend at the time, were sitting alone on Mother's bed in the bedroom while Mother was showering. Defendant reached under Victim's shorts and underwear, and touched and pushed her "cuca" with his four fingers "too hard" and that it "hurt" and she felt "horrible." Victim described her "cuca" as the front, private part of her body where she goes pee. Victim told Defendant to stop and he told her to be quiet and did not stop. After touching her "for kind of a long time," Defendant stopped, smelled his hand, and went to the kitchen where he washed his hands in the kitchen sink.

**{3}** After her Mother got out of the shower, Victim walked across the street to where her grandmother (Grandmother) and other extended family members live. Later that evening, while being bathed, Victim told Grandmother what Defendant did to her while she was on the bed with him. Grandmother and Aunt Blanca drove Victim to the hospital for a medical exam by a sexual assault nurse examiner (SANE). While on the way to the hospital, Victim again told her Grandmother and her Aunt Blanca about what Defendant did to her. The next day, Victim told a Safehouse forensic interviewer what happened. Defendant testified that "all the allegations [of CSCM and CSPM were] false."

**{4}** At trial, the jury was instructed on the elements of both criminal sexual penetration of a minor (CSPM) under the age of thirteen and the lesser-included crime of criminal sexual contact of a minor (CSCM) under the age of thirteen. The jury found Defendant guilty of CSCM. This appeal followed.

**{5}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of the case, we reserve further discussion of pertinent facts for our analysis.

**DISCUSSION**

**I.      The State Presented Sufficient Evidence to Sustain the Guilty Verdict**

**{6}** In reviewing sufficiency of the evidence, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "In that light, the Court determines whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). In conducting our inquiry, we do not reweigh the evidence or substitute our judgment for that of the fact-finder. *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M.

713, 114 P.3d 393. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674, *cert denied,* 2018-NMCERT- ___ (No. S-1-SC-37267, Oct. 15, 2018).

**{7}**     To find Defendant guilty of CSCM, the jury had to find: (1) Defendant touched or applied force to Victim's unclothed mons pubis, and/or mons veneris, vulva and/or vagina; (2) Victim was a child under the age of thirteen; and (3) it happened in New Mexico on or about July 8, 2014. *See* § 30-9-13(B)(1); *see also* UJI 14-925 NMRA. Defendant argues that the State failed to prove that he was the perpetrator or that the allegations were not fabricated by Victim.[1] Defendant directs us to evidence he believes was sufficient to support an acquittal, consisting of: (1) his denial of the allegations; (2) he and Mother had been broken up at the time of the alleged incident; (3) Victim told the Safehouse interviewer "I forgot all the other story" thus demonstrating that "she was repeating what someone else told her to say"; and (4) the recorded cell phone conversation also "showed that [Victim] was coached into saying that [Defendant] touched her private area." The State argues that Victim's testimony as to the time, setting, and details of the abuse, without gaps in memory, was sufficient to uphold the verdict. We agree.

**{8}**     First, although Defendant did deny committing CSPM or CSCM during his testimony, the jury heard Victim testify that she was telling the truth when she disclosed what Defendant had done to her in the bedroom, and heard Victim testify during cross-examination that "nobody ever told [her] to say anything like this." Mother also testified during cross-examination that she did not tell Victim "to say anything about the Defendant putting his fingers in her vagina." Although Defendant denied touching Victim's vagina, the jury sat as the finder of fact and judges of credibility and chose to afford credibility to Victim. *See State v. Fierro*, 2014-NMCA-004, ¶ 40, 315 P.3d 319 (observing that the jury, not the appellate court must "reconcile any conflicts in the evidence and determine where truth and credibility lies").

**{9}**     Second, Defendant directs us to his testimony that he and Mother were already broken up when Victim accused him of touching her vagina. Victim testified that Defendant was dating and living with her Mother on the day he touched her vagina. Grandmother testified that she saw Defendant coming out of Mother's trailer on the day she took Victim to the hospital. When defense counsel pressed Grandmother about whether it is possible that she saw someone other than Defendant coming out of the trailer, she responded unequivocally: "No, it was him." Other family members testified that they saw Defendant in front of Mother's house on the day Victim disclosed what Defendant had done to her. Although Mother testified that she and Defendant had broken up in early July, she also testified that that after the breakup, Defendant had come back to the trailer twice and stayed over once. Based on this testimony, it was reasonable for the jury to conclude that Defendant was still involved with Mother to some degree and was in the trailer on the date Victim disclosed that Defendant touched her vagina. *See State v. Caudillo*, 2003-NMCA-042, ¶ 7, 133 N.M. 468, 64 P.3d 495

---

1Although Defendant reserves the argument related to insufficient evidence for later in the brief in chief, for the purposes of brevity and clarity, we address it first.

(stating that evidence of a direct or circumstantial nature is sufficient if "a reasonable mind might accept [the evidence] as adequate to support a conclusion." (internal quotation marks and citation omitted)).

**{10}** Third, Defendant directs us to a section of Victim's Safehouse interview in which she stated she "forgot the rest of the story." Defense counsel asked Victim during cross-examination whether she remembered making the statement during her Safehouse interview. Victim responded that she remembered and explained "[t]hat meant that I forgot all the other things." Again, this statement was presented to the jury and we will not substitute our judgment for the jury's judgment with respect to the credibility of witnesses. *See Montoya*, 2005-NMCA-078, ¶ 3.

**{11}** Fourth, Defendant contends the recorded cell phone conversation made while Victim was driven to the hospital "showed that [Victim] was coached into saying that [Defendant] touched her private area." Directing us to and quoting *Maryland v. Craig*, 497 U.S. 836, 868 (1990) and *State v. Ruiz*, 2001-NMCA-097, ¶ 34, 131 NM 241, 34 P.3d 630, Defendant asserts the importance of proper interview techniques as a predicate for eliciting accurate and consistent recollection from children, but fails to develop this argument further. Defendant similarly fails to develop his argument that this Court "must not rely on improper inference, surmise, or a cynical speculation to fill the gaps in the State's proof." We therefore do not consider these arguments. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments).

**{12}** To the extent Defendant argues that his explanation should not be disregarded in light of this Court's standard of review, we note that although there is corroborating evidence in this case, "[i]n prosecutions for criminal sexual penetration, the testimony of the victim need not be corroborated and lack of corroboration has no bearing on weight to be given to the testimony." *State v. Nichols*, 2006-NMCA-017, ¶ 10, 139 N.M. 72, 128 P.3d 500 (alterations, internal quotation marks, and citation omitted); *see id.* ¶¶ 10, 31 (affirming conviction under NMSA 1978, Section 30-9-15 (1975) without corroborating evidence). In essence, Defendant presented his theory of fabrication to the jury, and the jury rejected it. "When a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence." *Montoya*, 2005-NMCA-078, ¶ 3. We conclude that the State presented sufficient evidence in support of the guilty verdict.

## II. Any Error in Admitting Prior Consistent Statements Was Harmless

### A. Abuse of Discretion

**{13}** "The admission or rejection of impeaching testimony going to the credibility of a witness is largely in the discretion of the trial court." *State v. Buchanan*, 1966-NMSC-045, ¶ 10, 76 N.M. 141, 412 P.2d 565. "We review the trial court's evidentiary rulings for

abuse of discretion[,]" which "occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{14}** Defendant argues that the district court erred in admitting the following impermissible hearsay that repeated Victim's allegations: (1) Grandmother's testimony that Victim told her Defendant touched her inside her underwear and then smelled his hand; (2) the cell phone recording of Victim on the way to the hospital, in which Victim says Defendant touched her vaginal area; (3) Aunt Hilda's testimony that Victim told her Defendant touched her; (4) the Safehouse forensic interviewer's testimony that Victim demonstrated a movement of her clothing and how Defendant smelled his four fingers; and (5) the video recording of Victim during the Safehouse forensic interview, in which Victim repeats the allegations.

**{15}** Defendant contends that he did not argue at trial that the story was recently changed or fabricated, but that it was fabricated from the beginning. He further argues that the motive to fabricate—the break up between Mother and Defendant—arose on July 4, and thus any consistent statements were not made prior to the motive to fabricate, and thus were unreliable. The State argues that the motive to fabricate arose after the Mother and Defendant ended their relationship, which did not occur before the July 8 and 9 statements were made.

**{16}** Based on the evidence, it is not clear when any potential improper motive first arose, if at all. *See State v. Casaus*, 1996-NMCA-031, ¶ 19, 121 N.M. 481, 913 P.2d 669 ("We appreciate the potential difficulties this construction creates for trial courts in determining not only whether 'improper influence or motive' exists but also when the motive originated."). Based on this record, and for purposes of our analysis of this issue, we assume without deciding that the district court erred in admitting prior consistent statements of Victim. *See State v. White*, 1994-NMCA-084, ¶ 14, 118 N.M. 225, 880 P.2d 322 ("Because we conclude that the error was harmless, we may assume, without deciding, that [the d]efendant is correct in his contention that there was error."). We next turn to the question of whether the admission of these statements was prejudicial. *See State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110 (holding that erroneously admitted evidence does not warrant a new trial unless the error was harmful).

## B.    Harmless Error

**{17}** Defendant is challenging an evidentiary error. "For purposes of harmless error review, violations of the rules of evidence are a non-constitutional error." *State v. Armijo*, 2014-NMCA-013, ¶ 13, 316 P.3d 902. "[A] non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (internal quotation marks and citation omitted). "[T]he reasonable probability standard requires a greater degree of likelihood that a particular error affected a verdict"

than reasonable possibility standard for constitutional errors. *Id.* (internal quotation marks and citation omitted). "Defendant bears the initial burden of demonstrating that he was prejudiced by the error." *State v. Astorga*, 2015-NMSC-007, ¶ 43, 343 P.3d 1245.

**{18}** Defendant has not carried this initial burden of establishing prejudice. Defendant argues that the introduction of the statements was not harmless error because it improperly amplified the State's evidence over and over again. This conclusory assertion of prejudice is inadequate. Defendant has not cited any legal authority to support his claim of prejudice. Nor has he articulated any theory about why the challenged evidence was prejudicial. We are under no obligation to review such unclear or undeveloped arguments, *see Guerra*, 2012-NMSC-014, ¶ 21, and we decline to do so here.

### III. The District Court Did Not Plainly Err By Allowing Evidence of Observations of Change in Behavior and Excluding Evidence of Victim's Medical History

**{19}** "We review evidentiary decisions by the district court for an abuse of discretion." *Nichols*, 2006-NMCA-017, ¶ 20. An abuse of discretion "occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

### A. Lay Testimony About Victim's Change in Behavior

**{20}** While acknowledging that this case "did not involve an expert witness," Defendant argues that the State "attempted to do through lay witnesses ([Victim]'s family), what it could not do through the use of an expert . . . show that [Victim]'s symptomatic change in behavior after the alleged event evidenced that: (1) [Victim] was telling the truth about being sexually abused; and (2) that [Defendant] was the perpetrator." Defendant argues that "this type of evidence" is similar to evidence of child sexual abuse accommodation syndrome or CSAAS, which other jurisdictions have determined may not be used to prove that the victim was a victim of a sexual assault. Defendant further argues that the State "asked the jury to draw an unsupported inference from this testimony and the district court should have excluded the evidence." The State responds that the lay witnesses' testimony was properly admitted because the lay witnesses testified to what they saw and did not attempt to link Victim's changes in behavior to Defendant's CSCM.

**{21}** Grandmother testified that after the CSCM, Victim began having urination accidents at school, stopped wanting to play with other children, and only wanted to sleep. Later, during Aunt Blanca's testimony the State asked Aunt Blanca about the urination accidents after the incident and Defendant objected. During a bench conference, the district court overruled the objection, explaining that Defendant waived it by failing to object when Grandmother had similarly testified.

**{22}** Because Defendant failed to object to Grandmother's testimony about the change in behavior, "we review this issue for plain error and look at whether the testimony affected a substantial right of [the d]efendant." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44; *see State v. Barraza*, 1990-NMCA-026, ¶ 17, 110 N.M. 45, 791 P.2d 799 (noting that "[e]ven if defendant did not raise proper objections at trial, he may be entitled to relief if the errors of which he complains on appeal constituted plain error[.]"). "Plain error is an exception to the general rule that parties must raise timely objection to improprieties at trial, and therefore it is to be used sparingly." *Dylan J.*, 2009-NMCA-027, ¶ 15 (internal quotation marks and citation omitted). We apply the rule only in evidentiary matters and "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Id.* (internal quotation marks and citations omitted). "In determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *Id.* (omission, internal quotation marks, and citation omitted).

**{23}** Defendant argues that this evidence impacted the verdict and resulted in reversible error because the sexual assault exam and the veracity of Victim's statement were inconclusive. The State responds that Defendant failed to object to certain parts of the testimony and because the jury had already heard the testimony, no reversible error resulted. Here, the State argues that the witnesses testified about their personal observations and the change of behavior testimony was proper as long as the witnesses did not attempt to link the behaviors to the offense.

**{24}** Although the admission of the lay witnesses' testimony concerning their observations of Victim's change in behavior might have posed some risk of improper inference by the jury, we do not conclude that the risks were sufficient to result in plain error. *See Barraza*, 1990-NMCA-026, ¶ 10 (noting that "it might be improper for the jury to infer from such studies that one suffering from those symptoms is actually a victim of rape"). The essence of the testimony was to share how Victim's behavior changed. The testimony about the change in behavior was limited and was within the personal knowledge of the lay witnesses. *See* Rule 11-602 NMRA (indicating that a witness may only testify to matters for which they have personal knowledge). Our review of the record reveals that none of the witnesses testified that Victim suffered from a syndrome, such as Rape Trauma Syndrome (RTS) or CSAAS, which would have required the testimony of a qualified expert. *See, e.g.*, *State v. Alberico*, 1993-NMSC-047, ¶ 80, 116 N.M. 156, 861 P.2d 192 (concluding that "allowing an expert to testify . . . that the [alleged] victim's symptoms are consistent with sexual abuse" is a purpose which "rest[s] on the valid scientific premise that victims of sexual abuse exhibit identifiable symptoms" and holding that evidence of a Post-Traumatic Stress Disorder diagnosis was valid and probative of whether a rape occurred); *State v. Newman*, 1989-NMCA-086, ¶¶ 11, 13-17, 109 N.M. 263, 784 P.2d 1006 (holding that expert testimony by child therapist that the victim exhibited symptoms that were consistent in her experience with child abuse victims was admissible to assist the jury to understand the behavior of sexually-abused children). Nor did the witnesses testify that because Victim experienced those symptoms, she was telling the truth; *see, e.g.*, *Barraza*, 1990-NMCA-

026, ¶ 18 (concluding that "the chief risk of RTS testimony—that the jury will improperly conclude that someone with the symptoms of RTS in fact is a rape victim—is not substantial" where a therapist testified that the victim suffered from symptoms consistent with symptoms suffered by other victims of sexual assault). Defendant has not persuaded us to have grave doubts about the validity of the verdict required for us to hold that Defendant's substantial rights were affected. Nor are we persuaded that the testimony affected the fairness and integrity of the trial. *Compare Dylan J.*, 2009-NMCA-027, ¶¶ 18, 19, 32 (holding that even though "any relevance attributable to the [expert's repeated] statements [concerning the identity of the defendant] appears to be minimal when compared to the risk of prejudice to [the d]efendant, since credibility was an important issue given the theme of [the d]efendant's defense that the boys' testimony resulted from suggestive statements[,]" and a witness testified as to the victim's truthfulness, defendant failed to prove that plain error resulted in both instances), *with State v. Lucero*, 1993-NMSC-064, ¶¶ 21-22, 116 N.M. 450, 863 P.2d 1071 (reversing and holding that plain error resulted where expert who was retained by the State to "evaluate the alleged victim's credibility and competency" testified that the victim "had in fact been molested[,]" "that it was the defendant who abused [her]," and that the victim's statements were truthful).

## B.    Victim's Medical History

**{25}**    Defendant argues that the district court erred in not allowing defense counsel to establish that Victim "was in counseling, taking sleep medications, and had a history of urinary tract infections (UTIs)" for reasons unrelated to the incident, thus giving the jury an incomplete picture and prejudicing his defense. The State responded that the district court did not prohibit Defendant from asking about Victim's medical history but did prohibit Defendant from inquiring about Victim's counseling history to show psychological problems prior to the incident. We agree.

**{26}**    During Grandmother's cross-examination, defense counsel asked whether Victim has "had urinary tract infections over several years," to which Grandmother responded "No, not that I am know of." Grandmother also confirmed during cross examination that Victim had been in counseling before the reported CSCM and testified that she was not aware why Victim was in counseling or what Victim's medical issues were. Then, defense counsel attempted to ask Grandmother about whether Victim took sleep medications. The district court sustained the State's objection on relevance grounds.

**{27}**    Defendant argues that the court excluded relevant evidence and prevented him from putting before the jury his theory of the case, thereby prejudicing his defense. *See State v. Orona*, 1979-NMSC-011, ¶¶ 8, 12, 92 N.M. 450, 589 P.2d 1041 (concluding that "[n]o more prejudice need be shown that the trial court's order may have made a potential avenue of defense unavailable to the defendant" in the context of a trial court's blanket prohibition and "absolute restriction on defense counsel's access to the [s]tate's prospective witnesses"). In Defendant's attempt to prove that Victim's behavior was caused by something other than the CSCM, he asked Grandmother about Victim's

counseling history, suggesting preexisting psychological issues, whether Victim took sleep medications, and whether she had a history of UTIs. Defendant claimed he needed this evidence in order to rebut the State's evidence of Victim's condition. Grandmother did respond to Defendant's questions about Victim's history of the UTIs and counseling, so Defendant had some opportunity to present this evidence.

**{28}**    However, the district court did prohibit Defendant from asking about sleep medications, and we believe that this evidence was relevant because the State elicited testimony that on the day of the CSCM Victim fell asleep in the afternoon, which was unusual. *See* Rule 11-401(B) NMRA ("Evidence is relevant if the fact is of consequence in determining the action."). Defendant had a right to present an alternative explanation, and the district court's ruling prohibited Defendant from doing so. However, this error was harmless because Victim falling asleep was a very small part of the State's case, and it is highly improbable that admission of the sleep medication evidence would have changed the outcome. *See Tollardo*, 2012-NMSC-008, ¶ 36 (noting that "a non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict").

**{29}**    The remaining issue is Defendant's challenge to the exclusion of additional evidence pertaining to Victim's history of psychological counseling. In granting the State's oral motion in limine on this subject, the district court stated that there was "no logical relevance to . . . counseling or any . . . specific psychological problem." The district court further stated that "there was no witness . . . or evidence to provide necessary medical testimony that would link the self-urination [issue with any] psychological problem that may have existed prior to this [incident]." We believe the district court ruled correctly. Merely having a history of counseling or a specific psychological diagnosis was irrelevant. Testimony drawing a causal connection between particular psychological diagnosis and Victim's behavior after the alleged CSCM could have been relevant, but Defendant would have needed an expert to present such testimony. *Cf. Alberico*, 1993-NMSC-047, ¶ 80 (concluding that "allowing an expert to testify . . . that the [alleged] victim's symptoms are consistent with sexual abuse" is a purpose which "rest[s] on the valid scientific premise that victims of sexual abuse exhibit identifiable symptoms."); *see also* Rule 11-702 NMRA (providing that a qualified expert may testify if their scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue). There is no indication in the record that Defendant had an expert available or ready to testify about Victim's medical history or the cause of her urination accidents. Nor did Defendant proffer that any lay witness had knowledge of Victim's behavior before the alleged CSCM that was similar to her behavior after the alleged CSCM. Under the circumstances, the district court did not err in prohibiting Defendant from presenting further evidence about Victim's history of counseling.

## IV.    Defendant's Motion for New Trial Was Properly Denied

**{30}**    Defendant argues that the district court erred in denying Defendant's motion for new trial, in which he argued that Mother confessed to CYFD, Defendant's father, and

the Tularosa police department that she "had lied about Defendant's having molested her daughter." Attached to the motion, as Exhibit A, was a letter purported to be from Mother, which "[c]ounsel knew about . . . prior to trial." Also attached, as Exhibit B, was an affidavit from Mother's former high school classmate, who was also Defendant's cousin, who recognized Mother's handwriting in the letter. Defendant further argued that the evidence "would have cast doubt on the validity of the testimony against [Defendant], especially since there was no physical evidence of any touching or penetration of the child by anyone—whether [Defendant] or anyone else" and thus, "it is probable that Defendant could have been acquitted" had the jury known this information. The State argued in response that the evidence was not newly discovered evidence within the meaning of the *State v. Volpato*, 1985-NMSC-017, ¶ 7, 102 N.M. 383, 696 P.2d 471.

**{31}** The district court denied the request. The district court found that the letter was too vague to be material under these circumstances; that it was not discovered since trial; and that even if it had not been in defense counsel's possession before trial, it could have been discovered through the exercise of due diligence. The court also explained that it could not "find that it probably would have changed result." Regarding Defendant's father's statement, the district court found that it could have been discovered with due diligence because defense was aware of sharing of information between Mother and Defendant's father and wife prior to trial and found that it was mere impeachment evidence, thus failing to meet the standard in *Volpato.*

**{32}** "Motions for new trials on the basis of newly discovered evidence are not encouraged." *State v. Desnoyers*, 2002-NMSC-031, ¶ 26, 132 N.M. 756, 55 P.3d 968, *abrogated on other grounds by State v. Forbes*, 2005-NMSC-027, ¶ 6, 138 N.M. 264, 119 P.3d 144. The probability of the new evidence changing a verdict is a question "addressed to the sound discretion of the trial court." *Id.* "The denial of a motion for a new trial is reviewed on appeal for a 'manifest abuse of discretion.' " *Id.* (internal quotation marks and citation omitted). "Denial of a motion for a new trial will only be reversed if the ruling of the trial court is arbitrary, capricious, or beyond reason." *Id.* "A motion for a new trial in New Mexico on the basis of newly-discovered evidence . . . will not be granted unless the newly-discovered evidence is such that it fulfills all of the following requirements: (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory." *Volpato*, 1985-NMSC-017, ¶ 7 (citation omitted). It is Defendant's burden to prove that the evidence met all six requirements. *Desnoyers*, 2002-NMSC-031, ¶ 26,

**{33}** We conclude that, at minimum, the first element was not met. Based on the testimony of Victim, her relatives, and Mother, Mother was not aware of the allegations until several weeks after the investigation started. Had Mother improperly influenced Victim to make the allegation, Mother likely would have been aware of the disclosure or the underlying allegations prior to the disclosure. The fact that Mother was not cooperative with law enforcement's investigation further undercuts Defendant's

argument. Mother's testimony at trial that she did not ever tell Victim to "say anything about the Defendant putting his fingers in her vagina," cannot be overcome by speculative evidence. We reject Defendant's argument that "the evidence demonstrates that [Victim]'s allegations were fabricated," because it only discusses Mother's allegations, and Mother was not the person who reported Victim's disclosure. We conclude that the district court did not err by denying Defendant's motion for a new trial.

## V. The Doctrine of Cumulative Error Does Not Require Reversal

**{34}** Defendant argues that his conviction should be reversed because his conviction was tainted by cumulative errors, thereby depriving him of a fair trial. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. For the reasons discussed above, having carefully reviewed the record and evidence, we conclude that Defendant was not deprived of his right to a fair trial.

## VI. We Lack the Necessary Factual Record to Consider Defendant's Ineffective Assistance of Counsel Claim

**{35}** We review ineffective assistance of counsel claims de novo. *State v. Mosley*, 2014-NMCA-094, ¶ 18, 335 P.3d 244. To establish an ineffective assistance of counsel claim, defendant must show "error by counsel and prejudice resulting from the error." *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494. A defendant bears the burden of demonstrating both incompetence and prejudice. *Id.* First, error is shown if the "attorney's conduct fell below that of a reasonably competent attorney." *Id.* (internal quotation marks and citation omitted). Second, prejudice is shown if "counsel's deficient performance prejudiced the defense such that there was a reasonable probability that the outcome of the trial would have been different." *State v. Barela*, 2018-NMCA-067, ¶ 17, 429 P.3d 961 (internal quotation marks and citation omitted). We begin with the general presumption that counsel's representation was effective. *See State v. Gonzales*, 2007-NMSC-059, ¶ 14, 143 N.M. 25, 172 P.3d 162.

**{36}** Defendant argues that trial counsel was ineffective in failing to call an expert to testify regarding how suggestive interview techniques can lead to false reports and prejudice resulted because "the jury did not know how to accurately assess the information presented." In addition, Defendant argues that defense counsel should have called an expert or Victim's doctor to "discuss [Victim's] history of [UTIs] and yeast infections and that symptoms of a yeast infection can present in the same manner as described the [Victim]'s aunts and grandmother." The evidence in the record indicates that defense counsel argued three motions to continue trial on the basis that he was planning to call a psychologist who could view the interviews of Victim to determine if the interviews were unreliable or unduly suggestive. At the scheduling conference discussing the third motion to continue, the court denied the motion stating that defense had more than enough time to get ready for trial and noted in the written order that "[a]ll

deadlines have passed and no required reports of any expert have been disclosed to the State." Then, despite a late disclosure and motion to strike filed by the State, defense counsel indicated that the testimony of the defense's expert, Dr. Noah K. Kaufman, would be limited to his conclusions and observations about the Safehouse forensic interview. Three weeks later, and a few days before trial, defense counsel indicated without explanation that the defense would not call Dr. Kaufman at trial. Defense counsel also indicated without explanation that he would not call Dr. Schneider, [2] who was previously disclosed as a witness for the defense.

**{37}** At the outset, " '[w]e note that our Supreme Court has 'expressly rejected the contention that the failure to introduce testimony of an expert witness constitutes ineffective assistance of counsel per se.' " *State v. Quinones*, 2011-NMCA-018, ¶ 34, 149 N.M. 294, 248 P.3d 336 (quoting *Lyle v. Jordan*, 2001-NMSC-016, ¶ 44, 130 N.M. 198, 22 P.3d 666). Here, Defendant has similarly failed to provide any indication as to whether an expert was available to testify as well as the content of the expert's testimony. *See id.* ¶ 34 (concluding the defendant did not make a prima facie case of ineffective assistance of counsel because there was "nothing in the record to indicate that a defense expert was actually available to testify in support of [the d]efendant at trial and what the content of the expert's testimony would have been"). Based on the record before us, Defendant has failed to demonstrate either incompetence or prejudice.

**{38}** We reject Defendant's contention that *State v. Aragon*, 2009-NMCA-102, 147 N.M. 26, 216 P.3d 276 controls our analysis. In *Aragon*, this Court concluded that the defendant demonstrated a prima facie case of ineffective assistance of counsel "based on [counsel's] failure to engage an expert for consultation, combined with her failure to conduct adequate pre-trial interviews of the State's experts." *Id.* ¶ 15. *Aragon* is distinguishable because expert testimony was the crux of the state's case. *See id.* Whereas here, the State did not rely on expert testimony at all.

**{39}** We conclude that Defendant has failed to demonstrate a prima facie case of ineffective assistance of counsel. However, our holding today does not preclude Defendant from pursuing his arguments and developing a proper record in a habeas corpus proceeding. *See State v. Bernal*, 2006-NMSC-050, ¶ 36, 140 N.M. 644, 146 P.3d 289.

**CONCLUSION**

**{40}** For the foregoing reasons, we affirm Defendant's conviction.

**{41}** **IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

---

[2] It is not clear from the record whether this individual was intended to be qualified as expert at trial or what would be the content of the anticipated testimony.

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**