This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36674

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RODNEY OWSLEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}**    Rodney Owsley (Defendant) appeals from his conviction for aggravated battery against a household member (great bodily harm), contrary to NMSA 1978, Section 30-3-16(C) (2008, amended 2018). On appeal, Defendant argues that (1) the district court erred by admitting inadmissible other-act evidence and expert witness testimony; (2) there was insufficient evidence to sustain Defendant's conviction; and (3) Defendant received ineffective assistance of counsel. We affirm.

## BACKGROUND

**{2}** Carole O. (Victim) was admitted to San Juan Regional Medical Center on January 2, 2013, for critical injuries including pelvic fractures, fractured ribs, a fractured sternum, broken vertebrae, cuts and abrasions across her body, and extensive bruising and swelling, all of which appeared to be the result of a severe beating. After her release from the hospital, Victim reported to law enforcement that she believed her husband, Defendant, had caused her injuries. Over the course of an investigation, Defendant maintained that Victim's injuries were self-inflicted and that to the extent he was responsible for any of Victim's injuries, it was accidental. Following the police investigation, Defendant was charged with numerous offenses, but was ultimately tried for a single count of aggravated battery against a household member.

**{3}** At trial, the State called three witnesses whose testimony is relevant to this appeal: (1) Victim; (2) Detective Jeremiah Whitaker, one of the two detectives dispatched to the hospital upon Victim's admission there; and (3) Dr. Jenny Hargrove, the emergency room physician who treated Victim. Through their testimonies, the State presented evidence that Defendant abused Victim during the days leading up to Victim's hospitalization by beating her, dragging her, and hitting her with a fireplace tool and a two-by-four piece of lumber. Regarding each witness, we describe only those aspects of their testimony that Defendant challenges on appeal, reserving further discussion of specific facts as needed within our legal analysis.

### Victim's Testimony

**{4}** On direct examination, Victim testified that she and Defendant married in 1995 and that by 2012 their marriage was "not good," in part because Defendant was having an affair and doing drugs. Victim testified that she planned to divorce Defendant and move to Pagosa Springs, Colorado, where she and Defendant had previously purchased land. By mid-December 2012, shortly before her hospitalization, Victim arranged to live with a roommate in Pagosa Springs, and Victim subsequently told Defendant that she "could[ not] take it anymore" and that she was leaving.

**{5}** Victim testified that on December 29, 2012, despite the deteriorated state of their marriage, she and Defendant went fishing to celebrate their wedding anniversary. Victim explained that Defendant was "in a horrible mood" that day, and that after they were at the lake for a short time, Defendant walked, and she drove herself, home. Victim later received a phone call at home from an employee at a mini-mart who had received an order of "grease" that Victim needed to fix her bike before moving to Pagosa Springs. According to Victim, after she received the call, Defendant went to the mini-mart and "ruined" one of the bicycles present there.

**{6}** Victim testified that when Defendant returned home, "the fight was on," and when she tried to enter their home office to find a friend's phone number in her address book, Defendant "yanked" her head back by her hair, which was pulled back in a ponytail. Victim said that she told Defendant he needed "to quit doing this," and clarified that

Defendant had pulled her head back by her ponytail in the past, and that it felt like whiplash when he did so. Defendant told Victim he was going to kill her, a threat Victim believed because Defendant had foam around his mouth "like a rabid dog" and "there was no soul" in his eyes, which she described appearing as "black as can be." Victim then again tried to enter the pair's home office, but Defendant followed her in and shoved her against a wall with such force that she fell to the floor. Thereafter, Victim was unable to get up so she "scooched" herself along the floor towards the living room. Victim knew she was injured, but she did not then seek medical attention because she did not want to "get stuck with" the bill as she had "all those times that [she] had to go to the hospital and doctors because of [Defendant]." Victim then testified that she and Defendant started arguing and that when Victim tried to "hobble" to the kitchen, she was hit in the back of the head. Victim said that when she came to, she saw Defendant masturbating in their bed because, in her view, he was excited by having hurt her.

{7}     Victim believed Defendant "assaulted her" two more times, on December 30 and 31, 2012, before she was finally hospitalized. Victim testified that as she awoke from a nap on the couch on December 30, 2012, she fell onto the floor. She said Defendant then picked her up and threw her onto the couch, then dragged her back off the couch and back onto the floor where she remembers seeing a wooden pallet. Victim said that her next memory was of waking up in the hospital.

{8}     Victim testified that during her hospitalization, she spent seven weeks in the ICU, where doctors put her into two medically induced comas and twice informed her family that she would not survive. Following her hospitalization, Victim was in a wheelchair, endured over four years of physical therapy, and required a catheter in order to use the restroom. Victim described the long-term effects of her injuries, including damage to her cognitive memory, vision problems, along with dizziness and compromised balance affecting her ability to walk.

{9}     When the State questioned Victim about her own alcohol use in December 2012, Victim stated that she only started drinking after Defendant "hurt" her and that she and Defendant had "some weird, horrible cycle going on" wherein Defendant would "hurt" her when "something was going on with him, whether it was dope or he was stealing from his job," and that because he would "take it out on" her, Victim used alcohol as a "crutch." The State asked whether Victim drank daily in December 2012, and Victim responded that she did not always drink daily, but that she did when Defendant "hurt" her.

{10}     During cross-examination, Victim reiterated that she used alcohol as a "coping mechanism" when Defendant hurt her. Defense counsel asked Victim about Defendant's alcohol use and Victim stated that Defendant "was a whiskey guy, and meth and heroin, and needles, and snorting." Defense counsel asked Victim about her inability to remember how she sustained her injuries, stating, "You testified before that you had no recollection of how you sustained those injuries?" In response, Victim said she was unconscious when she was "burned, . . . hit with the pallet, . . . stomped on, and kicked in the tailbone." Defense counsel pressed Victim on her inability to

remember what happened to her and characterized her testimony as contradictory up to that point. In response, Victim said, "[Defendant is] the only one that has ever hurt me in my life, hit me, hurt me, . . . throw[n] me out of a vehicle . . . he[ is] the only one that has ever hit me and hurt me like that in my life." Defense counsel did not object to any of Victim's testimony.

**Detective Whitaker's Testimony**

**{11}** Defendant challenges only a small portion of Detective Whitaker's testimony related to Victim's statements to him regarding Defendant's prior abuse of her. During cross-examination, defense counsel asked Detective Whitaker whether Victim spoke to him during his investigations about her memory of an "incident" that occurred at a lake in Missouri. Detective Whitaker could not recall, and in response, defense counsel refreshed his recollection with his report from the investigation, prompting Detective Whitaker to testify that he recalled Victim telling him about an "incident" that took place at a lake in Missouri. On redirect, Detective Whitaker confirmed that the "incident" to which he referred related to Victim's allegation of prior abuse perpetrated by Defendant.

**Dr. Hargrove's Testimony**

**{12}** Defendant similarly challenges only a portion of Dr. Hargrove's testimony, arguing that it was speculative and beyond the scope of her expertise in emergency medicine. During direct examination, Dr. Hargrove discussed the life-threatening injuries Victim presented upon her January 2, 2013, admission to the hospital and stated that although Victim was generally unresponsive, Dr. Hargrove did recall hearing Victim repeatedly say, "My husband beat the shit out of me."

**{13}** Dr. Hargrove gave detailed testimony about Victim's injuries, stating that Victim had bruising, abrasions, and burns across her body and face, extensive fractures of multiple ribs, and a fractured sternum, which Dr. Hargrove said would require "an extensive amount of force" and raised a "high level of suspicion." She also testified that Victim had a bruised lung, broken vertebrae, a broken pelvis, a broken sacrum, extensive bruising to her "pelvic region," back, and buttocks, as well as swelling and bruising on her genitalia. When asked by the State whether the "cumulative total of [Victim's] injuries resulted from anything but a beating" Dr. Hargrove testified that the only other cause of such extensive injuries that she had encountered during her career was a "horrific" motor vehicle accident and that Victim's injuries were consistent with extensive physical assault.

**{14}** The State showed Dr. Hargrove a close-up photograph of an injury to one of Victim's legs, and asked Dr. Hargrove whether, hypothetically, the injury depicted was consistent with an injury caused by "a metal rod or a kind of narrow metal bar," and Dr. Hargrove said, "Yes," characterizing the injury as "blunt force trauma." The State then showed Dr. Hargrove another photograph, this one depicting bruising on the back of Victim's legs, and asked Dr. Hargrove, "[There is] a straight edge to the top of those injuries, would you agree?" Dr. Hargrove responded, "Absolutely," and when the State

posed a subsequent hypothetical question, defense counsel objected to the line of questioning as improperly leading the witness. The district court did not rule on the objection but the State rephrased the question to address the concern, asking instead, "That wound, describe it, what's it caused by, if you know." Dr. Hargrove stated that the type of "deep purple," severe, intense bruising present in the photograph was a hematoma. Dr. Hargrove further explained that it was "unusual" for a hematoma to have a "straight pattern," indicating that it was likely caused by "something heavy, with a lot of force behind it, that had a very straight edge." The State then asked, "Would a piece of wood, or a piece of lumber like a two-by-four, . . . be consistent with the injury you see there?" Defense counsel again objected to the question as leading, but the district court overruled the objection and Dr. Hargrove answered affirmatively.

## DISCUSSION

### I. The District Court's Admission of Testimony by Victim, Detective Whitaker, and Dr. Hargrove Was Neither Plain Nor Cumulative Error

**{15}** Defendant contends that the district court plainly erred by admitting or failing to strike certain testimony of Victim, Detective Whitaker, and Dr. Hargrove. Specifically, Defendant argues that testimony by Victim and Detective Whitaker regarding prior acts of abuse by Defendant as well as Defendant's drug use, theft, and other acts was inadmissible propensity evidence, and that its admission was plain error. Additionally, Defendant argues that the district court abused its discretion in admitting Dr. Hargrove's testimony because it exceeded the scope of her expertise and was the result of improper leading questions by the State. Alternatively, Defendant argues that the district court's evidentiary rulings resulted in cumulative error. We are unpersuaded.

### A. The Admission of Testimony by Victim and Detective Whitaker Was Proper

**{16}** Because trial counsel for Defendant did not object to the alleged evidentiary errors presented by the testimony of Victim and Detective Whitaker, we review only for plain error. *See State v. Bregar*, 2017-NMCA-028, ¶ 28, 390 P.3d 212 ("If an appellant fails to object to the admission of evidence below, on appeal we will only review for plain error[.]"); *see also State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071 ("Plain error, however, applies only to evidentiary matters."). "Plain error is an exception to the general rule that parties must raise timely objection to improprieties at trial, and therefore it is to be used sparingly." *State v. Gwynne*, 2018-NMCA-033, ¶ 27, 417 P.3d 1157, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36926, Apr. 10, 2018) (internal quotation marks omitted). "Under the plain error rule, there must be (1) error, that is (2) plain, and (3) that affects substantial rights." *Id.* (internal quotation marks and citation omitted). We apply the plain error rule "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted). When determining whether plain error has occurred, we "examine the alleged errors in the context of the testimony as a

whole." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted).

**{17}** Defendant claims that the district court committed plain error by admitting testimony from both Victim and Detective Whitaker that included inadmissible other-act evidence under Rule 11-404(B)(1) NMRA, which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." While the rule generally prohibits the use of propensity evidence, such evidence may be permitted for other, non-propensity purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). In the context of a criminal case, the rule requires that the prosecution provide "reasonable notice of the general nature of any [relevant non-propensity] evidence that the prosecutor intends to offer at trial." Rule 11-404(B)(2)(a). "Rule 11-404(B) is a rule of inclusion not exclusion, providing for the admission of all evidence of other acts that are relevant to an issue in trial, other than the general propensity to commit the crime charged." *State v. Bailey*, 2017-NMSC-001, ¶ 14, 386 P.3d 1007 (alteration, internal quotation marks, and citation omitted).

**{18}** When Rule 11-404(B) does not bar the admission of evidence, the court must determine whether the evidence is nevertheless inadmissible under Rule 11-403 NMRA, which permits admission only if "the probative value of the evidence outweighs the risk of unfair prejudice[.]" *State v. Otto*, 2007-NMSC-012, ¶ 10, 141 N.M. 443, 157 P.3d 8. Rule 11-403 provides that the court may preclude evidence if "its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Thus, any other-act evidence offered for a non-propensity purpose must be weighed against the jury's inclination to use the evidence improperly. *See State v. Ruiz*, 1995-NMCA-007, ¶ 12, 119 N.M. 515, 892 P.2d 962 ("[P]rejudice is unfair when the tendered evidence goes only to character or propensity. However, when the tendered evidence serves a legitimate purpose other than character or propensity, then that legitimate purpose should be balanced against the jury's tendency to use the evidence illegitimately."). "Rule 11-403 does not guard against *any* prejudice whatsoever, but only against *unfair* prejudice." *Bailey*, 2017-NMSC-001, ¶ 16 (emphasis added).

## 1. The State Was Not Required to Provide Notice Under Rule 11-404(B) In This Circumstance

**{19}** Here, Defendant contends that testimony by both Victim and Detective Whitaker regarding alleged prior abuse by Defendant, as well as Victim's testimony regarding Defendant's other acts, including drug use, property damage, infidelity, and theft, violate Rule 11-404. As an initial matter, Defendant argues that the State did not provide notice as required by Rule 11-404(B)(2)(a) and (b), and Defendant argues that the State's failure to provide such notice supports a conclusion that plain error occurred. However, we do not consider the State's lack of notice here to be error because there is no indication that the State intended to elicit the relevant testimony at issue. Rather, Victim

repeatedly blurted out unresponsive, tangential information beyond the scope of the questions posed to her by the State without any objection from defense. As well, it was Defendant's trial counsel who first elicited Detective Whitaker's testimony regarding the out-of-state report documenting one occurrence of Victim's prior allegations of domestic abuse by Defendant. Our review of the record reveals no evidence that the State intentionally elicited other-act evidence from either Victim or Detective Whitaker. In fact, to the contrary, the State repeatedly curtailed Victim's extraneous testimony by interrupting her and redirecting the line of questioning. Thus, to the extent Defendant argues error occurred because the State failed to provide notice before introducing other-act evidence, we conclude such notice was not required here.

**2.    Victim's Testimony Did Not Result in Plain Error**

**{20}**    On appeal, Defendant argues that portions of Victim's testimony were inadmissible because they were only relevant to demonstrate that Defendant was a "bad person." Specifically, Defendant claims that Victim's testimony suggested that Defendant's history of allegedly abusing Victim necessarily meant that Defendant "must have [abused her] this time as well[,]" in violation of Rules 11-404(B) and 11-403, and constituting plain error. In response, the State contends that Victim's testimony about Defendant's prior abuse and other acts could have been properly offered for admissible non-propensity purposes. We agree with the State and conclude that when viewed in the context of her testimony as a whole, Victim's testimony was properly admitted as evidence offered for a non-propensity purpose and, therefore, did not violate Rules 11-404(B) and 11-403 and was not plain error. We explain.

**{21}**    First, much of Victim's testimony at issue could be admissible for the non-propensity purpose of providing context. We consider the admission of other-act evidence to be proper when used to elucidate the context of other admissible evidence. *See Otto*, 2007-NMSC-012, ¶ 12 (recognizing our willingness to admit other-act evidence to show the context of otherwise admissible evidence, but declining to apply such reasoning because the relevant evidence was properly admitted for other acceptable non-propensity purposes); *State v. Jones*, 1995-NMCA-073, ¶ 8, 120 N.M. 185, 899 P.2d 1139 (explaining that because Rule 11-404(B) is a rule of inclusion rather than exclusion, we have approved the admission of other-act evidence for the purpose of showing "context of other admissible evidence"); *State v. Jordan*, 1993-NMCA-091, ¶ 7, 116 N.M. 76, 860 P.2d 206 (allowing admission of other-act evidence to provide the jury with context of other admissible evidence). Here, Victim's limited testimony about Defendant's drug use, infidelity, theft, and property damage did not rise to the level of plain error given its potential admissibility to provide context regarding the then-existing state of Victim's relationship with Defendant, leading to her decision to move out of state and the sudden escalation of violence on December 29, 2012, that led to her hospitalization. *See, e.g., State v. Flores*, 2010-NMSC-002, ¶ 32, 147 N.M. 542, 226 P.3d 641 (explaining that other-act evidence may be admissible when relevant to assist jurors in determining a defendant's guilt because "the jury may consider *the relationship of the parties* and the animus of the accused toward the [victim]" (emphasis added) (internal quotation marks and citation omitted)).

**{22}** Second, Victim's testimony regarding alleged past acts of abuse by Defendant was admissible to rebut Defendant's theory that Victim's injuries were self-inflicted or accidental in nature by demonstrating Defendant's intent, pattern of abusing Victim, and lack of accident. *See State v. Hnulik*, 2018-NMCA-026, ¶ 28, 458 P.3d 475 ("Evidence of a prior bad act is admissible if it bears on a matter in issue, such as intent, in a way that does not merely show propensity." (internal quotation marks and citation omitted)), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36909, Mar. 26, 2018). Detective Whitaker testified that in a voluntary interview with Defendant prior to his arrest, Defendant maintained that Victim's injuries were self-inflicted and that if he caused any of her injuries, it was accidental. Thus, testimony by Victim demonstrating that Defendant's actions were intentional and that Defendant had a history of abusing Victim was admissible to rebut Defendant's explanation of Victim's injuries. *See Otto*, 2007-NMSC-012, ¶ 13 (holding that evidence of other uncharged acts by the defendant "was properly admitted to refute the inference of mistake or accident created by [the d]efendant's statement" to law enforcement); *State v. Woodward*, 1995-NMSC-074, ¶ 17, 121 N.M. 1, 908 P.2d 231 (holding that evidence of the defendant's violent behavior toward the victim was admissible to show "motive, intent, plan, or knowledge"), *abrogated on other grounds as recognized by State v. Montoya*, 2014-NMSC-032, 333 P.3d 935.

**{23}** Having already concluded that Victim's testimony did not violate Rule 11-404(B), insofar as it was properly admitted for *non-propensity* purposes, we conclude as well that the same testimony did not result in any unfair prejudice against Defendant under Rule 11-403 given that "[e]vidence is not unfairly prejudicial purely because it inculpates [the d]efendant; instead, unfair prejudice occurs when the evidence *only* goes to character or propensity." *State v. Carson*, 2020-NMCA-015, ¶ 29, ___ P.3d ___ (No. A-1-CA-35211, Nov. 5, 2019), *cert. denied*, 2020-NMCERT-___ (No. S-1-SC-36909, Feb. 6, 2020).

**{24}** Given the absence of error in the admission of Victim's testimony, we hold that the admission of Victim's testimony was not plain error. *See Gwynne*, 2018-NMCA-033, ¶ 27 ("Under the plain error rule, there must be (1) error, that is (2) plain, and (3) that affects substantial rights." (internal quotation marks and citation omitted)).

### 3. Detective Whitaker's Testimony Did Not Result in Plain Error

**{25}** Defendant similarly argues that Detective Whitaker's testimony regarding Victim's prior allegations of abuse by Defendant was inadmissible propensity evidence and its admission was plain error.

**{26}** Here, defense counsel, not the State, elicited testimony from Detective Whitaker about an out-of-state report referred to by Victim during investigation. On redirect, the State merely confirmed that the report to which Detective Whitaker referred included allegations by Victim of prior abuse perpetrated by Defendant. Defendant may not, on appeal, now claim the district court erred in allowing testimony elicited by defense counsel. *See State v. Jim*, 2014-NMCA-089, ¶ 22, 332 P.3d 870 ("It is well established

that a party may not invite error and then proceed to complain about it on appeal."); *State v. Handa*, 1995-NMCA-042, ¶ 35, 120 N.M. 38, 897 P.2d 225 ("To allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice." (alteration, internal quotation marks, and citation omitted)). Moreover, as we have already stated, because Defendant explained that Victim's injuries were self-inflicted and that any role he had in causing Victim's injuries was accidental, it was proper for the State to rebut Defendant's theory accordingly. *See Otto*, 2007-NMSC-012, ¶ 13. Lastly, Detective Whitaker's testimony regarding Victim's allegations could also have been properly admitted as non-propensity evidence offered to prove Defendant's intent and lack of accident in committing the charged crimes in the present case. *See Woodward*, 1995-NMSC-074, ¶ 17.

**{27}**   Having concluded that Detective Whitaker's testimony regarding the prior event came about because Defendant initiated the conversation, and that the testimony was properly admitted for *non-propensity* purposes, it again follows that admission of Detective Whitaker's testimony did not result in any unfair prejudice against Defendant. *See Carson*, 2020-NMCA-____, ¶ 29. Because there was no error in the admission of Detective Whitaker's testimony, we hold that there was no plain error. *See Gwynne*, 2018-NMCA-033, ¶ 27 ("Under the plain error rule, there must be (1) error, that is (2) plain, and (3) that affects substantial rights." (internal quotation marks and citation omitted)).

## B.   The District Court Did Not Abuse Its Discretion by Admitting Dr. Hargrove's Testimony

**{28}**   Defendant next argues that the district court abused its discretion by overruling defense counsel's objections to Dr. Hargrove's testimony, which Defendant contends was beyond the scope of her expertise and in response to improper leading questions by the State.

**{29}**   Because defense counsel objected to the portions of Dr. Hargrove's testimony at issue, we review for an abuse of discretion. *State v. Hughey*, 2007-NMSC-036, ¶ 9, 142 N.M. 83, 163 P.3d 470 ("The admission or exclusion of evidence is within the discretion of the trial court. On appeal, the trial court's decision is reviewed for abuse of discretion."). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{30}**   Here, defense counsel objected to leading questions by the State. Defendant argues the district court should have sustained those objections, and the failure to do so was an abuse of discretion. It is well recognized that whether or not to permit leading questions on direct examination is within the discretion of the court under Rule 11-611 NMRA(C). *See Jim. v. Budd*, 1987-NMCA-079, ¶ 18, 107 N.M. 489, 760 P.2d 782 (explaining that "[t]he trial court did not err in restricting [the] plaintiff's use of leading

questions on direct examination); *State v. Herrera*, 1972-NMCA-068, ¶ 14, 84 N.M. 46, 499 P.2d 364 ("The allowance of leading questions is discretionary with the trial court."). As such, and because Defendant has failed to demonstrate how the district court erred by permitting the State's leading questions during its direct examination of Dr. Hargrove, we conclude the district court did not abuse its discretion in this regard.

**{31}** Defendant's contention that Dr. Hargrove's testimony exceeded the scope of her expertise on the subject of emergency medicine is likewise unavailing. Specifically, Defendant argues that the State's leading questions prompted Dr. Hargrove to improperly speculate about the potential causes of Victim's injuries, a subject beyond the scope of her expertise.

**{32}** Under Rule 11-702 NMRA, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." "Expert witnesses function to assist the trier of fact in understanding evidence and the factual issues in a case." *State v. Consaul*, 2014-NMSC-030, ¶ 56, 332 P.3d 850. "Trial courts have broad discretion in admitting expert testimony as long as the expert (1) is qualified, (2) provides testimony that will assist the trier of fact, and (3) provides testimony regarding scientific, technical, or other specialized knowledge with a reliable basis." *Id.* (internal quotation marks and citation omitted). "An expert may testify that an observation or an opinion *is consistent with* an underlying fact, even though that same observation may be consistent with other facts as well." *Id.* ¶ 68 (emphasis added). Here, Dr. Hargrove's testimony did not speculate as to the causes of Victim's injuries, as Defendant argues. Rather, Dr. Hargrove testified that the characteristics of Victim's injuries *were consistent with* having been caused by certain objects like a wood two-by-four or a metal rod. Such is permissible expert witness testimony and the district court, therefore, did not abuse its discretion in overruling defense counsel's objections and admitting Dr. Hargrove's testimony. *See id.*

## C. There Was No Cumulative Error

**{33}** Defendant alternatively argues that the admission of testimony by Victim, Detective Whitaker, and Dr. Hargrove resulted in cumulative error because "the cumulative impact of [the testimony] was sufficient to deny [Defendant] a fair trial[.]"

**{34}** "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The cumulative error doctrine is strictly applied, and may not be successfully invoked if the record as a whole demonstrates that the defendant received a fair trial. *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814. "[A] fair trial is not necessarily a perfect one." *Gwynne*, 2018-NMCA-033, ¶ 41 (alteration, internal quotation marks, and citation

omitted). When there is no error, "there is no cumulative error." *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211. Thus, having found neither plain error nor abuse of discretion by the district court, and given our strict application of cumulative error, we conclude that the record before us demonstrates that no cumulative error occurred because Defendant received a fair trial. *See Trujillo*, 2002-NMSC-005, ¶ 63.

## II.    Sufficient Evidence Supports Defendant's Conviction

**{35}**    Defendant argues there was insufficient evidence to support his conviction for aggravated battery on a household member (great bodily harm) "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *Montoya*, 2015-NMSC-010, ¶ 52 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See Rojo*, 1999-NMSC-001, ¶ 19. "Our appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *Gwynne*, 2018-NMCA-033, ¶ 49 (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{36}**    Per its instructions, in order to convict Defendant of aggravated battery against a household member (great bodily harm), the jury had to find that: "(1) [D]efendant touched or applied force to [Victim] by hitting, striking, or beating her; (2) [D]efendant intended to injure [Victim]; [and] (3) [D]efendant caused great bodily harm to [Victim] or acted in a way that would likely result in death or great bodily harm to [Victim.]" At trial, the jury heard detailed testimony from Victim, Dr. Hargrove, and Detective Whitaker regarding Defendant's infliction of intentional injuries upon Victim over a three-day period prior to her hospitalization. Victim testified that Defendant struck, and otherwise beat her, as he had in the past. Detective Whitaker described her injuries, and Dr. Hargrove testified to their serious nature. Additionally, the jury viewed 21 photographic State exhibits depicting Victim's injuries while she was in the hospital. These exhibits corroborated testimony from each of the three witnesses regarding the type and severity of Victim's injuries. As well, Victim reiterated that she had never been hit by any person other than Defendant.

**{37}**    Defendant contends that because Victim gave "conflicting statements of what happened" and testified to her memory loss and her difficulty remembering how she was injured, there was insufficient evidence to sustain his conviction. However, Defendant's challenge relates to the weight and credibility of the evidence, and it is well established that such determinations are reserved for the jury. *See State v. Varela*, 1999-NMSC-045, ¶ 47, 128 N.M. 454, 993 P.2d 1280 ("Under our case law, the fact[-

]finder determines credibility."); *Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."); *State v. Roybal*, 1992-NMCA-114, ¶ 9, 115 N.M. 27, 846 P.2d 333 ("It was for the trial court as fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay."). Because a reasonable juror could conclude, based on the evidence presented, that Defendant intended to injure Victim and caused Victim great bodily harm by hitting, striking, or beating her, we must reject Defendant's claim that the evidence is insufficient to support his conviction.

### III. Defendant Has Not Established a Prime Facie Case of Ineffective Assistance of Counsel

**{38}** Defendant also argues that he received ineffective assistance of counsel because defense counsel failed to (1) assert and seek dismissal on speedy trial grounds, (2) object to testimony from Victim and Detective Whitaker, and (3) secure and present testimony from necessary witnesses, including Defendant. We disagree and hold that Defendant's ineffective assistance claims should be considered in a habeas corpus proceeding.

**{39}** "Habeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (alteration, internal quotation marks, and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.*

**{40}** To present a prima facie case of ineffective assistance of counsel, "a defendant must establish that (1) counsel's performance was deficient, *and* (2) such deficiency resulted in prejudice against the defendant." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (emphasis added). Defense counsel's performance is deficient if his or her conduct falls below that of a reasonably competent attorney. *Grogan*, 2007-NMSC-039, ¶ 11. "[J]udicial review of the effectiveness of counsel's performance must be highly deferential." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 50, 130 N.M. 198, 22 P.3d 666. "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted).

**{41}** Here, Defendant has failed to present a prima facie case of ineffective assistance of counsel for any of his three underlying claims. First, regarding Defendant's ineffective assistance of counsel claim as it pertains to defense counsel's failure to assert and seek dismissal on speedy trial grounds, we conclude that the record before us is not sufficient to support such an assertion. Indeed, Defendant acknowledges as much by stating, "[T]here was no factual development of actual prejudice in the district court with respect to the aggravated battery charge." Without a factual basis demonstrating prejudice, Defendant has not established a prima facie case of ineffective assistance of counsel and, therefore, a petition for habeas corpus is the proper avenue to bring this claim. *See State v. Castro*, 2017-NMSC-027, ¶ 37, 402 P.3d 688 (concluding that, where "[a d]efendant has not made a prima facie case for ineffective assistance of counsel, . . . the proper avenue to bring th[e] claim is a petition for habeas corpus").

**{42}** Second, Defendant's claim that defense counsel's failure to object to relevant testimony resulted in ineffective assistance of counsel is unpersuasive considering that "[a]n attorney's decision to object to testimony or other evidence is a matter of trial tactics." *State v. Jacobs*, 2000-NMSC-026, ¶ 49, 129 N.M. 448, 10 P.3d 127. Because defense counsel's failure to object in the district court is presumed on appeal to have been strategic, Defendant has not shown deficiency on the part of defense counsel and has, therefore, not presented a prima facie case of ineffective assistance of counsel. *See Garcia*, 2011-NMSC-003, ¶ 33; *Hunter*, 2006-NMSC-043, ¶ 13.

**{43}** Defendant's third and final contention that defense counsel was ineffective by failing to secure and present testimony from necessary witnesses is likewise unavailing, considering that we cannot evaluate this claim based on the record before us. Accordingly, we hold that Defendant has not presented a prima facie claim of ineffective assistance of counsel and reiterate that such a claim is more effectively pursued through a habeas corpus proceeding. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" (internal quotation marks and citation omitted)).

**CONCLUSION**

**{44}** For these reasons, we affirm Defendant's convictions.

**{45} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**