IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number:** 2019-NMCA-047

**Filing Date: February 27, 2019**

**No. A-1-CA-36833**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**HENRY HILDRETH JR.,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert A. Aragon, District Judge**

Certiorari Granted, September 9, 2019, S-1-SC-37558.  Released for Publication
September 24, 2019.

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Judge.**

**{1}** Defendant Henry Hildreth Jr. appeals his misdemeanor and felony convictions for aggravated battery against a household member following a jury trial in which his attorney refused to participate. Defendant raises several arguments. First, Defendant argues, and the State concedes, that Defendant was denied his constitutional right to assistance of counsel. Second, Defendant argues the district court judge's conduct during trial should bar his retrial on double jeopardy grounds. Third, Defendant argues

the district court abused its discretion in not granting his motions for a continuance and mistrial. Lastly, Defendant claims the amended judgment convicting him of two counts of aggravated battery against a household member based on a single incident constitutes double jeopardy. We agree that the absence of effective representation deprived Defendant of a fair trial and mandates reversal of his convictions. We disagree that the district judge's conduct bars retrial, and thus remand for retrial. In light of our rulings on these issues, Defendant's remaining arguments are moot.

**Background**

**{2}** The parties do not dispute the following facts. Defendant was charged in 2016 with misdemeanor aggravated battery against a household member without great bodily harm, NMSA 1978, § 30-3-16(B) (2008, amended 2018) (Count 1), unlawful taking of a motor vehicle, NMSA 1978, § 30-16D-1 (2009) (Count 2), and felony aggravated battery against a household member with great bodily harm (Count 3). Section 30-3-16(C). On July 11, 2016, Steven Seeger (Seeger) entered his appearance as defense counsel for Defendant. Seeger appeared with Defendant at his arraignment on October 21, 2016. Three days later, the district court entered a notice of hearing scheduling Defendant's case for a three-day jury trial starting March 14, 2017.

**{3}** On Friday, March 10, 2017, Seeger filed a motion on behalf of Defendant seeking a continuance of the jury trial on the basis that, among other things, the State had filed its disclosures and witness list late. Specifically, the State had provided discovery the previous day in the form of a CD that Seeger had not yet had the chance to review. Defendant, who by then had not disclosed his own trial witnesses, stated that to "force [Seeger] to go to trial on March 14, 2017 would deny the Defendant effective assistance of counsel and thereby deny him his [Sixth] Amendment [right] to counsel." The parties appeared before the district court judge on the morning of March 10, 2017 for a pretrial conference, at which time the judge denied the motion for continuance. Seeger responded to the ruling by informing the court: "I will not be ready, your honor. I will not participate in the trial. I will be present but [I will] not participate." The judge said, "If that is true, then [Defendant] would have excellent grounds for appeal on incompetency of counsel," to which Seeger responded, "Absolutely. I will not participate." After the judge pointed out that the trial date had been set for months and that Seeger had ample notice, the following exchange took place:

> Judge: Well, Mr. Seeger, I've known you for years. I know you are an extremely competent and diligent attorney and it is precisely because of the potential arisal [sic] of contingencies such as you have just described that notice of trial in these cases [is] sent out far in advance of the date. My schedule cannot accommodate this case being placed number one on next month's docket. It's very simple.
>
> Seeger: I'm not gonna do a C-minus job on the trial on Tuesday.

> Judge: Well, then I guess you'll have to do an F-minus job and just sit there. I don't know—I can't tell you how to run your business, Mr. Seeger.
>
> Seeger: That's my plan.
>
> Judge: Well, that's not a good plan.

The district court suggested that Seeger raise any discovery issues by filing motions in limine before trial.

**{4}** On the morning of trial, Seeger renewed Defendant's motion to continue as well as a motion for sanctions based on the State's late disclosures, which Seeger had filed the day before. Seeger explained that he did not have time to listen to the CD because he spent the weekend attending the wake of a co-worker and facilitating the reassignment of his co-worker's cases to other attorneys. The Stated responded that it did not come into possession of the CD until March 9, 2017, and stated for the first time that it did not intend to use any of the information on the CD at trial. Additionally, the State pointed out that its amended March 9, 2017 witness list did not include any previously undisclosed witnesses. The judge denied Defendant's motions to continue and for sanctions, telling Seeger, despite Seeger himself having no role in the State's decision to provide a CD less than a week prior to trial that had been set months before, that if Seeger felt he was being "deprived of information, [he] should have filed the motion long before this" and that there was no showing of prejudice based on the late disclosures. In response, Seeger reiterated that he was not going to participate in the trial, and as the trial record demonstrates, he remained steadfast in that decision. Indeed, our review of the record confirms that Seeger played the most marginal of roles at trial: he did not participate in jury selection, give a substantive opening statement, cross-examine any of the State's witnesses, call any witnesses on behalf of Defendant, move for a directed verdict, meaningfully participate in the submission of jury instructions, or give a closing argument. As the following summary reflects, Seeger's active involvement during trial was limited and narrowly confined.

**{5}** Seeger did not ask the venire any questions and replied "No comment" each time the judge asked for his position on striking a potential juror. After the jury was sworn, Seeger moved for a mistrial, arguing that Defendant had been denied effective assistance of counsel. The district court denied the motion, stating, "He has not been denied effective assistance of counsel. He has been . . . refused *any* assistance of counsel. There's a world of difference there." The judge asked Seeger to confirm "that you are not going to defend this man?" Seeger answered, "Correct. I am not going to participate because I cannot provide effective assistance of counsel." The trial continued and after the State's opening statement, the judge turned to Seeger and said, "I ask you to remember, as an officer of the court, opening statement is reserved to evidence that is going to be presented." After Seeger responded, "I don't know what you mean," the judge explained, "I mean the weight of your heart at the moment is of no consequence whatsoever to the duty the jury is intended to perform today." Despite the court's admonition, Seeger focused his opening statement not on the anticipated

evidence, but on the Sixth Amendment of the United States Constitution and his client's right to counsel. The judge told Seeger that his opening statement was improper and that he would not allow him to proceed. Seeger responded, "I have nothing further then." The judge instructed the jury to ignore the "civics lesson that was presumptuously offered by Mr. Seeger."

{6}     The State proceeded to call two of its three witnesses during the morning session. Seeger made no objections during the witnesses' direct examinations and conducted no cross-examinations. After the lunch break, Seeger renewed his motion for a mistrial. He argued that he had looked at the State's late-disclosed CD and saw that it contained statements from three witnesses—including the two that had testified that morning—and Defendant. Seeger stated that he did not have time to listen to the CD or have it transcribed for use in cross-examination and voiced a concern that it might contain information useful to his client's defense. Although the State admitted the CD had been in the possession of an agent of the State before March 9, 2017, the district court nevertheless denied the mistrial motion because it did not believe that Defendant had demonstrated prejudice.

{7}     The State called one additional witness. During that witness's testimony, Seeger made a single objection to the admission of an item of physical evidence, which the district court sustained. Seeger made no other objections and conducted no cross-examination of the witness. At the close of the State's case, Seeger told the court that he had hoped to call four or five witnesses but that he had neither disclosed nor subpoenaed them. Seeger did not move for a directed verdict or make any other motions. Before releasing the jury for the day, the court informed the jury that the State had the burden of proof; that Defendant was not required to put on any witnesses of his own; and that Defendant would not be calling any witnesses.

{8}     During the discussion about jury instructions, Seeger stated he had not prepared any instructions and proceeded to express concern about the judge's bias in the case. The judge responded, "I cannot help that Mr. Seeger. You seem to be troubled by a number of things, namely your obligation to abide by your oath and defend the people that you take as clients." The judge stated that he resented the accusation of bias and encouraged Seeger to report him to the New Mexico Judicial Standards Commission if he believed he (the judge) was biased. At that point, Seeger indicated that he would not oppose any of the instructions tendered by the State. The discussion on jury instructions continued and Seeger asked about a step-down instruction. The court noted that the charge of misdemeanor aggravated battery on a household member without great bodily harm, § 30-3-16(B) was a lesser included offense of the felony charge of aggravated battery on a household member with great bodily harm, § 30-3-16(C). As a result, the district court ruled that the misdemeanor charge would be given as a step-down instruction rather than a separate count. Besides inquiring about the step-down instruction, Seeger did not participate in the discussion over jury instructions.

{9}     The next morning, Seeger again renewed his motion for a mistrial on the basis of ineffective assistance of counsel. The district court again denied the motion. Before

closing arguments, the court reminded the jury, "Defendant has chosen not to present a case, and that is his right. . . . Whether or not [Defendant] presents any evidence, the burden always remains on the State[.]" The court also informed the jury that it was optional for the parties to present closing arguments. During the State's closing, Seeger objected once, claiming that the prosecutor was expressing his personal opinion on the evidence. Seeger asked for a curative instruction, which the court gave after sustaining the objection. When the State completed its closing argument, the court asked Seeger if he wanted to "exercise the opportunity to argue the evidence that has been presented." Seeger stood up and began, "I think, given the circumstances, I could not provide effective assistance . . ." at which point the judge stopped him saying, "Alright, that is not evidence, Mr. Seeger. If you don't intend to argue the evidence, please return to your seat." The court then released the jury for deliberations.

**{10}** The jury acquitted Defendant of unlawful taking of a motor vehicle but found him guilty of aggravated battery against a household member with great bodily harm. *See* § 30-3-16(C). Although Seeger did participate in the sentencing hearing, he provided no response concerning his position on the order for a pre-sentence report. Defendant was ultimately sentenced to the maximum term of three years in prison, followed by two years of parole. NMSA 1978, § 31-18-15(A)(11) (2016). Seeger did not respond to the request for approval of the judgment and order of commitment, despite having the proposed document provided to him both in person and by email. Seeger timely filed a notice of appeal on Defendant's behalf on October 18, 2017. On November 3, 2017, and despite its earlier ruling that the misdemeanor aggravated battery offense was a lesser included offense the district court entered an amended judgment, adding a conviction for aggravated battery against a household member with no great bodily harm "as charged in Count 1 of the Criminal Information . . . incorporated into Count 3 by the Court." Seeger approved the amended judgment and sentence without objection.

## Discussion

**{11}** As relevant to our disposition of this appeal, Defendant argues that he was denied his constitutional right to assistance of counsel and that the district judge's conduct during trial should bar his retrial. We address each argument in turn.

## Defendant Did Not Receive Effective Assistance of Counsel

**{12}** As we have noted, the State concedes that Defendant was denied his right to assistance of counsel, and that reversal and remand for a new trial is warranted. Although we are not bound by the State's concession, we conclude that under the circumstance of this case, Defendant's convictions must be reversed. *See State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076 (stating that an appellate court is not bound by the state's concession of an issue). Our review is de novo. *See State v. Mosley*, 2014-NMCA-094, ¶ 18, 335 P.3d 244 (stating that ineffective assistance of counsel claims are reviewed de novo).

**{13}** Generally, an ineffective assistance of counsel claim is established when a defendant shows "error by counsel and prejudice resulting from the error." *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494. Error is shown if the "attorney's conduct fell below that of a reasonably competent attorney." *Id.* (internal quotation marks and citation omitted). While it is usually a defendant's burden to show both incompetence and prejudice, *id.*, a defendant need not establish prejudice in those cases where "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* ¶ 12 (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). Those circumstances in which prejudice to the defendant can be presumed include: "(1) denial of counsel altogether; (2) defense counsel's failure 'to subject the prosecution's case to meaningful adversarial testing'; and (3) when the accused is 'denied the right of effective cross-examination.' " *Id.* ¶ 12 (citing *Cronic*, 466 U.S. at 659).

**{14}** Prior to the start of trial in this case, Seeger announced his intention to not participate in the trial proceedings. Staying true to his word, Seeger abdicated his role as an advocate by refusing to engage in jury selection, give an opening statement, present a defense or call any witnesses, subject the State's witnesses to cross-examination, or give a closing argument on behalf of his client. We agree with the district court that this was not a case of ineffective assistance of counsel but rather a case where "[Defendant] has been refused *any* assistance of counsel." After all, Seeger's voluntary posture of determined inaction both precluded any "meaningful adversarial testing" of the State's evidence and denied Defendant the right of effective cross-examination within the meaning of *Grogan*, 2007-NMSC-039, ¶ 12, and *Cronic*, 466 U.S. at 659. In these circumstances, Seeger's conduct rose to the level of a constructive denial of counsel sufficient to create a presumption of prejudice. *See Martin v. Rose*, 744 F.2d 1245, 1250-52 (6th Cir. 1984 (concluding that defense counsel's "bizarre and irresponsible stratagem" of "abandon[ing] all attempts to defend his client at trial" amounted to "constitutional error even without any showing of prejudice"); *see also United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991) (concluding that defense counsel's concession during summation that there was no reasonable doubt as to any of the disputed factual issues amounted to a failure to subject the prosecution's case to meaningful adversarial testing and, thus, a failure to provide effective assistance under *Cronic*).

**{15}** Seeger's purposeful failure to participate in any meaningful way in Defendant's trial represents a constitutional violation under both the United States and New Mexico Constitutions. *See* U.S. Const. amend. VI (guaranteeing a right to assistance of counsel in criminal cases); N.M. Const. art. II, § 14 (same), thus compelling us to vacate Defendant's convictions and remand for a new trial.

**{16}** We pause here to address the unusual and unseemly situation occasioned by Seeger's adamant refusal to provide his client with a defense in a felony trial and the district judge's decision to proceed with such a trial in circumstances where some form of guilty verdict was not only a near certainty, but had no realistic chance of being upheld on appeal. First, we address Seeger's refusal to provide his client with a

defense, conduct that violated Seeger's constitutional responsibility to his client and his duty to the tribunal for which, as a licensed attorney, he serves as an officer. Stated simply, attorneys in New Mexico are not empowered with decisional autonomy regarding when trials commence and when they do not commence. District courts are. Second, we feel obliged to provide our district courts with some guidance as to how to respond to situations like this in the future. A district judge is not helpless when faced with an attorney threatening to withdraw from participation in a criminal trial, but has various options to address the situation. For instance, the district court can order new counsel to represent the defendant. *See Sanders v. Rosenberg*, 1997-NMSC-002, ¶ 9, 122 N.M. 692, 930 P.2d 1144 ("If a compelling reason exists that supports the disqualification of counsel, a court may reject that party's chosen counsel."). Or it can impose a sanction on the culpable attorney while at the same time granting a continuance to give the defendant and his or her attorney time to prepare for trial. If, in that circumstance, the attorney still refuses to participate in the face of a clear order to do so, the court can invoke its contempt powers against the obstructionist attorney, *see* NMSA 1978, § 34-1-2 (1851). While we understand the district court's concerns over the efficient administration of its docket, forcing a criminal defendant to go to trial with an attorney who refuses to participate itself hinders, rather than promotes judicial economy by wasting scarce court resources while all but ensuring a violation of the defendant's constitutional rights. *See Grogan*, 2007-NMSC-039, ¶ 10 ("[I]n cases of obvious ineffective assistance of counsel, the trial judge has the duty to maintain the integrity of the court, and thus inquire into the representation.").

## Retrial is Not Barred in this Case

**{17}** Defendant argues that the district court judge's conduct bars retrial "under principles of double jeopardy." A double jeopardy challenge is a constitutional question of law, which we review de novo. *See State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. The New Mexico Constitution, like the Federal Constitution, prevents any person from being "twice put in jeopardy for the same offense[.]" N.M. Const. art. II, § 15; *see* U.S. Const. amend. V. Double jeopardy may bar retrial on the basis of official misconduct during the initial trial. *See State v. Breit*, 1996-NMSC-067, ¶ 32, 122 N.M. 655, 930 P.2d 792. Defendant urges us to apply the three-part test announced by our Supreme Court in *Breit*, which bars retrial under Article II, Section 15, of the New Mexico Constitution

> when improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, and if the official knows that the conduct is improper and prejudicial, and if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal.

*Breit*, 1996-NMSC-067, ¶ 32.

**{18}** Although Defendant acknowledges that our appellate courts have applied *Breit* only in cases of prosecutorial misconduct, he nonetheless urges this Court to extend

*Breit* to the judge's actions in this matter. Defendant contends that the jurors saw "tense, fraught interactions between [the judge] and Mr. Seeger. Over and over, the jurors saw Mr. Seeger decline to ask questions. The jurors saw Mr. Seeger attempt to address them, and they saw the way [the judge] stopped him." Further, Defendant asserts, "[b]y making dismissive comments toward the defense in the presence of the jury, [the judge] violated his duty to appear impartial." And by forcing the parties to continue with the trial in light of Seeger's declaration of non-participation, Defendant argues, the judge knew Defendant's rights were being violated and acted in "willful disregard of the reversal that was likely to result." Defendant contends these actions satisfy all three prongs of the *Breit* test. We disagree.

**{19}** In *Breit*, our Supreme Court characterized the proceedings as "a trial out of control" resulting from the "pervasive, incessant, and outrageous nature of the prosecutor's misconduct." *Id.* ¶¶ 37, 41 (internal quotation marks omitted). From opening statements to closing arguments, the prosecutor's misconduct was apparent. *Id.* ¶¶ 41-43. He attempted to inflame the jury during opening arguments with irrelevant allegations and exaggerated claims that no evidence could ever support. *Id.* ¶ 41. He reacted with "sarcasm and scorn" toward opposing counsel and the district court whenever objections were raised and sustained. *Id.* Even after being admonished by the court, the prosecutor attempted to solicit irrelevant comments from the defendant. *Id.* ¶ 42. He impliedly threatened opposing counsel and made "belligerent remarks." *Id.* He displayed "sarcasm, sneering, rolling of eyes and exaggerated expressions" throughout the trial in front of the jury. *Id.* (internal quotation marks omitted). During closing arguments, the prosecutor attacked the defendant's election to exercise his rights to counsel and to remain silent, and suggested that opposing counsel had lied and collaborated with the defendant to fabricate a defense. *Id.* ¶ 43. In reversing defendant's convictions and barring further prosecution of the underlying first-degree murder and related charges, our Supreme Court noted, "As isolated instances, most of these infractions would be unlikely to raise the bar to retrial. But in this case, . . . the misconduct was unrelenting and pervasive. . . . The cumulative effect [of which] was to deny the defendant a fair trial." *Id.* ¶ 45

**{20}** *Breit* has no bearing on this case. Even if we were to extend *Breit* to instances of judicial misconduct, the district court judge here acted appropriately and appeared impartial throughout the proceedings. This Court listened to the entire audio recording of the trial, and there was no instance in which the district court judge's tone of voice sounded inappropriate or improper. The judge did not raise his voice, and he kept his commentary on Seeger's actions to a minimum in front of the jury. The judge repeatedly gave Seeger the opportunity to change course and actively participate in the trial proceedings by, among other things, asking Seeger if he wished to address the venire during jury selection, inquiring about Seeger's position regarding potential jurors, giving him an opportunity to make an opening statement, and asking if he wanted to cross-examine witnesses. Seeger declined each of the judge's invitations, and responded by saying "No comment" during jury selection, improperly commenting on the right to counsel during opening statement, and refusing to participate in cross-examination. When the judge asked Seeger if he wanted to give a closing statement, Seeger again

brought up the right to counsel before being stopped. We cannot say that the judge's comments were "dismissive" or appeared biased. Rather, the judge was responding to Seeger's repeated attempts to argue that he was ineffective as counsel, a legal matter wholly inappropriate for the jury to consider. Moreover, the judge made an effort to avoid interrupting Seeger by reminding him before opening and closing statements to confine himself to discussing the evidence. Additionally, the judge attempted to mitigate Seeger's inaction in the eyes of the jury multiple times by reminding them that the State had the burden of proof and that Defendant was not required to put on any witnesses or make a closing argument. Nor did the judge act in "willful disregard" of an obvious reversal. To the contrary, the district court made every attempt to have Seeger participate and defend his client, all to no avail. Given these circumstances, we decline Defendant's invitation to extend *Breit* to judicial conduct and hold that double jeopardy does not bar retrial in this case.

**Conclusion**

**{21}**   For the foregoing reasons, we reverse Defendant's convictions and remand for retrial.

**{22}   IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**BRIANA H. ZAMORA, Judge**