The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: _____**

**Filing Date: February 9, 2022**

**NO. S-1-SC-37558**

**STATE OF NEW MEXICO,**

     Plaintiff-Respondent,

v.

**HENRY HILDRETH JR.,**

     Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Robert A. Aragon, District Judge**

Bennett J. Baur, Chief Public Defender
Caitlin C. M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**VIGIL, Chief Justice.**

{1}     This case presents a question of first impression: whether judicial conduct at trial may result in a bar to retrial under the double jeopardy clause of the New Mexico Constitution, and if so, whether the district court judge's conduct in this case bars retrial. *See* N.M. Const. art. II, § 15 (prohibiting any person from being "twice put in jeopardy for the same offense"). We hold that judicial conduct may result in a bar to retrial under the New Mexico Constitution and that the judicial conduct in this case bars Defendant's retrial.

## I.      BACKGROUND

### A.     The District Court Proceedings

{2}     A criminal complaint was filed in the district court on September 9, 2016, charging Defendant Henry Hildreth, Jr., with felony aggravated battery against a household member with great bodily harm, misdemeanor aggravated battery against a household member without great bodily harm, and unlawful taking of a motor vehicle. NMSA 1978, § 30-3-16(B), (C) (2008, amended 2018); NMSA 1978, § 30-16D-1 (2009). At the arraignment the following month, Defendant was found to be indigent, and Steven Seeger was appointed to represent him. Trial was set for March 14, 2017, on a trailing docket.

{3}     The State belatedly filed its witness list on March 1, 2017, and eight days later, on March 9, 2017, filed an amended witness list to correct an address. That same

day, nine days after the discovery deadline and five days before trial, the State provided Defendant with a CD containing audio recordings of statements made by the State's witnesses and Defendant in interviews with the police.

{4} The day after receiving the CD, on Friday, March 10, 2017, Seeger filed a motion to continue the jury trial. Seeger argued that he needed more time to review the CD in order to adequately prepare for trial and that, without more time to prepare, Defendant would be denied his right to effective assistance of counsel. That same day, the parties appeared before the judge for a pretrial conference.

{5} At the pretrial conference, the judge denied the motion for continuance without hearing any argument. From that point forward, Seeger remained determined to get a continuance, and the judge remained committed to proceed with trial as scheduled. Their intransigence forms the root of the issue in this case.

{6} In response to the judge's denial of his motion to continue, Seeger told the judge that he would not be ready for trial. He stated that he would "be present but not participate." The judge responded that "[i]f that is true, then [Defendant] would have . . . excellent grounds for appeal on incompetency of counsel." The judge told Seeger that if he objected to the State's untimely discovery, he could file a motion, and it would be heard before trial. Seeger did just that.

{7} Seeger filed a motion for sanctions on March 13, 2017, the day before trial, asking the judge to prevent any of the State's identified witnesses from testifying. In its written response, the State acknowledged that its discovery was late. With respect

to the CD, the State asserted that it was not within the State's "control" until March 9, 2017, and it was made available to Seeger that same day. The State asserted that sanctions were not appropriate, but if the judge was inclined to grant any sanctions, the less punitive sanction of a continuance instead of preventing any of the State's witness from testifying was appropriate.

{8}     At the motion hearing, held on March 14, 2017, the first day of the trial, Seeger argued that due to the untimely discovery disclosures, the State should be prohibited from calling any witnesses. With regard to the CD, Seeger asserted that it might contain a "prior statement of [a] witness, and [that he had] not had an opportunity to listen to it to see whether it ha[d] potential material for cross-examination" or exculpatory information. In response to a question from the judge regarding whether the State intended to actually use the CD during trial, the prosecutor said, "it's nothing that the State would have presented today." The State then again requested that if sanctions were imposed, the sanction be a continuance rather than exclusion of its witnesses. The judge denied the motion and imposed no sanctions. The trial then started.

{9}     During the trial, Seeger refused to participate in voir dire, challenge any jurors, examine any witnesses, or participate in the selection of jury instructions. Seeger also declined to proffer an opening statement or a closing statement. However, he made three motions for mistrial—all based on assertions of ineffective

4

assistance of counsel resulting from the State's late disclosures, and, consequently, his asserted inability to prepare for trial.

{10}    Seeger first moved for a mistrial shortly after the jury was sworn in. The judge immediately denied the motion and the trial proceeded. The State then called two of its three witnesses before the lunch hour. These were the victim and an eyewitness to the alleged aggravated battery. Seeger did not cross-examine either one.

{11}    After the lunch break, Seeger again moved for a continuance or mistrial based on the late discovery. Seeger told the judge that during lunch he reviewed the writing on the CD and discovered that it contained statements from the two witnesses who had testified that morning, another witness, and Defendant. Seeger argued that as a result of the State's late disclosures, he did not have a chance to listen to the CD or get the statements on the CD "transcribed to use [for] potential cross-examination." Seeger noted that he did not know what exculpatory information or prior inconsistent statements were on the CD and renewed his prior motion for a continuance or mistrial.

{12}    The State's response was that the CD was handed over to Seeger on March 9, 2017, the day it was received at the district attorney's office. In response to questioning from the judge, however, the prosecutor confirmed that the police officer who investigated the case was in possession of the CD before he turned it in to the district attorney's office. Moreover, in a subsequent filing the prosecutor disclosed that the police officer's report describing the interviews and confirming

5

that they were recorded was received by the district attorney's office seven days after the offense, on June 30, 2016.

{13}   The judge then turned back to Seeger and asked why he had not reviewed the CD in the intervening days between his receipt of it and the trial. Seeger answered that on the following day, he was either in court or in the process of reviewing the public defender cases of a contract attorney who had suddenly passed away so those cases could be reassigned to new attorneys. On the weekend, he continued reviewing the files and attended the viewing of his deceased colleague, and he had "no time" to review the CD the following Monday, the day before the trial. The judge denied the motions, concluding that there had been "no showing of prejudice to the court." Based on the prosecutor's concession that the CD had been in a State agent's possession, the judge also admonished the prosecutor that "[t]here is no distinction made between the agents of the State. The State is the State."

{14}   Despite Seeger's efforts, the judge allowed trial to proceed. Before closing arguments, Seeger again moved for mistrial. And again, the judge denied his motion. The jury found Defendant guilty of felony aggravated battery against a household member with great bodily harm, and Defendant appealed to the Court of Appeals.

**B.   The Court of Appeals' Opinion**

{15}   In the Court of Appeals, "Defendant argue[d], and the State concede[d], that Defendant was denied his constitutional right to assistance of counsel." *State v. Hildreth*, 2019-NMCA-047, ¶ 1, 448 P.3d 585. Defendant also argued that "the

district court judge's conduct during trial should bar [Defendant's] retrial on double jeopardy grounds." *Id.*

{16}     The Court of Appeals concluded that Defendant was denied his constitutional right to effective assistance of counsel and reversed Defendant's conviction. *Id.* The Court of Appeals reasoned that "Seeger's conduct rose to the level of a constructive denial of counsel sufficient to create a presumption of prejudice." *Id.* ¶ 14.

{17}     Turning to Defendant's double jeopardy argument, the Court of Appeals acknowledged that "Seeger's adamant refusal to provide his client with a defense in a felony trial and the district judge's decision to proceed with such a trial in circumstances where some form of guilty verdict was not only a near certainty, but had no realistic chance of being upheld on appeal," created an "unusual and unseemly situation." *Id.* ¶ 16. Nevertheless, the Court of Appeals rejected Defendant's argument that retrial was barred under the three-part test set forth in *State v. Breit*, 1996-NMSC-067, ¶ 32, 122 N.M. 655, 930 P.2d 792. *Hildreth*, 2019-NMCA-047, ¶¶ 17, 20. The Court of Appeals determined that *Breit* had "no bearing" on the case and even if it did, "the district court judge . . . acted appropriately and appeared impartial throughout the proceedings." *Id.* ¶ 20. In analyzing whether the *Breit* test would be satisfied if it did apply, the Court of Appeals focused on the judge's demeanor, his tone of voice, and his efforts "to avoid interrupting Seeger." *Id.* Based on this analysis, the Court of Appeals held that the judge's conduct did not

7

bar retrial, reversed Defendant's conviction based on ineffective assistance of counsel, and remanded the case for retrial. *Id.* ¶¶ 15, 20, 21.

{18}    Defendant petitioned this Court for a writ of certiorari to review the Court of Appeals' conclusion that *Breit* does not apply, and even if it does, the judge's conduct did not meet *Breit*'s criteria to bar retrial.

## II.    DISCUSSION

### A.    Standard of Review

{19}    At issue in this case is whether judicial conduct may result in a bar to retrial under the New Mexico Constitution. N.M. Const. art. II, § 15. "A double jeopardy claim is a question of law that we review de novo." *State v. Bernal,* 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

### B.    *Breit* Applies to Judicial Conduct

{20}    The State contends that because the facts of *Breit* concerned prosecutorial misconduct, the *Breit* test was meant to be limited to prosecutors and does not apply to judicial conduct. We disagree. The language of the *Breit* test itself and its history support its application to judges.

{21}    *Breit* directs that retrial is barred when (1) the "improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial," (2) "the official knows that the conduct is improper and prejudicial," and (3) "the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal." 1996-

8

NMSC-067, ¶ 32. This language is not on its face limited to prosecutorial conduct. In fact, the reference to the "official" and "official misconduct" is certainly broad enough to include judicial conduct. This was no accident.

{22} Both New Mexico and federal precedent influenced the language of the *Breit* test. In *State v. Day*, although we held retrial was not barred under those facts, we noted that double jeopardy barred retrial when "the prosecutor engaged in any misconduct for the purpose of precipitating a motion for a mistrial, gaining a better chance for conviction upon retrial, or subjecting the defendant to the harassment and inconvenience of successive trials." 1980-NMSC-032, ¶ 15, 94 N.M. 753, 617 P.2d 142, *cert. denied*, 449 U.S. 860 (1980). "This standard was an amalgam of various pronouncements by the United States Supreme Court." *Breit*, 1996-NMSC-067, ¶ 26. For example, *Day* referred with approval to the standard in *United States v. Dinitz*:

> The Double Jeopardy Clause does protect a defendant against *governmental actions* intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where bad-faith conduct *by judge or prosecutor*, threatens the harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant.

424 U.S. 600, 611 (1976) (alteration, internal quotation marks, and citation omitted) (emphasis added); *Day*, 1980-NMSC-032, ¶ 11. In fact, "[a]ll of the elements of the rule adopted by *Day* were included in [the] double-jeopardy standard set forth

9

earlier" in *Dinitz*. *Breit*, 1996-NMSC-067, ¶ 26. *Day* also endorsed *United States v. Jorn*, which provided, "where a defendant's mistrial motion is necessitated by *judicial or prosecutorial* impropriety designed to avoid an acquittal, reprosecution might well be barred." 400 U.S. 470, 485 n.12 (1971) (emphasis added); *Day*, 1980-NMSC-032, ¶ 13.

{23}    Following *Day*, the United States Supreme Court issued its opinion in *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982), which narrowed the federal double jeopardy rule. *See Breit*, 1996-NMSC-067, ¶ 26 ("[T]he federal cases upon which we based our double-jeopardy rule in *Day* were narrowly restricted by *Kennedy* to a rule based upon prosecutorial intent."). But in *Breit*, we rejected this narrow approach, concluding that "when this Court derives an interpretation of New Mexico law from a federal opinion, our decision remains the law of New Mexico even if federal doctrine should later change." 1996-NMSC-067, ¶¶ 26, 27. Instead, we adopted a test that was "implicit in *Day*." *Id.* ¶ 32. We utilized a "'willful disregard'" standard that "encompass[ed] and augment[ed] the circumstances implicated by the rule in *Day*." *Id.* ¶ 36. One such circumstance was judicial impropriety. *See id.* ¶ 26. Because of this, we used the language "improper *official* conduct," *id.* ¶ 32 (emphasis added), rather than "prosecutorial misconduct," as used in *Day* to accurately capture the scope of the double jeopardy bar. *Day*, 1980-NMSC-032, ¶¶ 2, 5.

10

**{24}** Thus, based on the language of *Breit* itself and the history behind its adoption, we conclude that *Breit* applies to judicial conduct.

## C. The Judge's Conduct Satisfies the *Breit* Test

**{25}** Having determined that *Breit* applies to judges, we turn to whether the judge's conduct in this case satisfies the three prongs of the *Breit* test. We review each prong in turn.

### 1. The first *Breit* prong

**{26}** Under this prong, we are required to determine if the judge's conduct was "so unfairly prejudicial to [Defendant] that it [could not] be cured by means short of a mistrial or a motion for a new trial." *Breit*, 1996-NMSC-067, ¶ 32.

**{27}** In its analysis, the Court of Appeals focused on the tone and demeanor of the judge before the jury to conclude that the judge's conduct was not improper. *Hildreth*, 2019-NMCA-047, ¶ 20. The Court of Appeals "listened to the entire audio recording of the trial," focusing on the "judge's tone of voice" which "sounded" appropriate and proper. *Id.* The Court of Appeals noted that "[t]he judge did not raise his voice, . . . kept his commentary on Seeger's actions to a minimum in front of the jury[, and] . . . repeatedly gave Seeger the opportunity to change course and actively participate in the trial proceedings." *Id.* The Court of Appeals determined that because the judge did not sound dismissive or biased, the judge's conduct was not improper. *Id.* This is where the Court of Appeals erred in its analysis.

11

{28} While the tone and content of remarks may be considered when determining whether an official's conduct was improper, *see Breit*, 1996-NMSC-067, ¶¶ 41-44, these considerations are not dispositive. Rather, we must "carefully examine the [official's] conduct in light of the totality of the circumstances of the trial," *id.* ¶ 40, and assess "the *effect*" the official's conduct had on the defendant. *State v. McClaugherty*, 2008-NMSC-044, ¶ 26, 144 N.M. 483, 188 P.3d 1234.

{29} Looking to the totality of the circumstances of the trial, we repeat that this was a battle between Seeger and the judge over whether a continuance was warranted or trial should proceed as scheduled. The denial of Seeger's repeated requests for a continuance resulted in repeated motions for a mistrial. These procedural maneuvers between Seeger and the judge deprived Defendant of his constitutional right to the effective assistance of counsel, prompting us to consider the circumstances under which the denial of a continuance is an abuse of discretion because it causes undue prejudice to a defendant.

{30} In *State v. Salazar*, we concluded that "our case law requires the trial court to consider the *Torres* factors initially in evaluating a motion for a continuance." *State v. Salazar*, 2007-NMSC-004, ¶ 27, 141 N.M. 148, 152 P.3d 135 (citing *State v. Torres*, 1999-NMSC-010, 127 N.M. 20, 976 P.2d 20). As reiterated by the *Salazar* Court, the *Torres* factors include:

> the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous

12

continuances in the same matter, the degree of inconvenience to the parties and to the court, legitimacy in motives in requesting the continuance, fault of the movant in causing a need for delay, and the prejudice to the movant in denying that motion.

*Salazar*, 2007-NMSC-004, ¶ 14 (citing *Torres*, 1999-NMSC-010, ¶ 10). "In addition to meeting the *Torres* factors, [the d]efendant must show that the denial of the continuance prejudiced him." *Salazar*, 2007-NMSC-004, ¶ 16.

{31}	In *Salazar*, we noted the prejudice to the defendant by the late discovery of a videotape and the effect it had on defense counsel's cross-examination of a witness. *Id.* ¶¶ 7, 23. We determined "that the trial court abused its discretion in denying [the d]efendant's motion" for a continuance because "[t]here had been no previous continuances, . . . the State did not oppose [the] continuance," and "[the d]efendant was not at fault for causing the delay." *Id.* ¶¶ 1, 21. We concluded by stating that "if the motion for a continuance depends on a claim that, absent a continuance, the defendant will have been or will be denied effective assistance of counsel, *Brazeal* offers guidance on how that claim should be analyzed," but "that standard should play a subsequent, even subsidiary role to the *Torres* factors and analysis." *Id.* ¶¶ 27-28 (citing *State v. Brazeal*, 1990-NMCA-010, ¶ 15, 109 N.M. 752, 790 P.2d 1033).

{32}	In *Brazeal*, our Court of Appeals set forth a two-prong analysis to determine whether the denial of the continuance amounts to ineffective assistance of counsel. 1990-NMCA-010, ¶ 15. The first consideration is whether "a per se violation of [the] defendant's constitutional rights" has occurred—"in other words, whether we can

13

*presume . . .* that [the] defendant suffered from ineffective assistance of counsel because of the denial of a continuance." *Id.* The second consideration is the defendant's specific claims of ineffective assistance of counsel. *Id.* The circumstances in which prejudice to the defendant can be presumed include: "(1) denial of counsel altogether; (2) defense counsel's failure 'to subject the prosecution's case to meaningful adversarial testing'; and (3) when the accused is 'denied the right of effective cross-examination.'" *State v. Grogan*, 2007-NMSC-039, ¶ 12, 142 N.M. 107, 163 P.3d 494 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

{33}     With this background in mind, we begin with the judge's denial of Seeger's first motion for a continuance. Although there had been no previous continuances, we cannot say that the judge's conduct was improper in denying this motion. To be sure, the State provided late discovery of the CD, but in looking to the *Torres* factors, as mandated by *Salazar*, the degree of inconvenience to the parties, legitimacy of motives, and prejudice to Defendant were unknown at this time. *Salazar*, 2007-NMSC-004, ¶¶ 27-28. Seeger's comment that he would "not participate" at trial does not change this determination. The judge could not know whether Seeger would remain true to his word, as evinced by the judge's response, "*[i]f that is true*, then [Defendant] would have . . . excellent grounds for appeal." (Emphasis added.)

{34}     At the motion hearing the morning of the trial, Seeger argued for sanctions because of the late discovery. Again, he argued that the CD *might* contain prior

14

statements of a witness and that he had not had an opportunity to review it for exculpatory material. Apparently acting on the State's assurance that the CD was "nothing that the State would have presented today," the judge denied the motion for sanctions. Again, there was no abuse of discretion and the trial commenced.

{35}    At trial, the judge watched as Seeger refused to participate in voir dire, juror challenges, opening statement, and witness examination. After the jury was sworn and Seeger made his first motion for mistrial, the judge asked Seeger to confirm "that [Seeger was] not going to defend this man," to which Seeger replied, "[c]orrect." The trial continued and the State called two of its three witnesses. Seeger did not cross-examine either witness.

{36}    By this time Seeger's voluntary posture of determined inaction precluded any "meaningful adversarial testing" and denied Defendant "the right of effective cross-examination." *Grogan*, 2007-NMSC-039, ¶ 12 (internal quotation marks and citation omitted). Thus, "Seeger's conduct rose to the level of a constructive denial of counsel sufficient to create a presumption of prejudice." *Hildreth*, 2019-NMCA-047, ¶ 14. By now, it was clear that Defendant was being denied his right to effective assistance of counsel, but that is not the question before us. The question is whether the judge's conduct was "so prejudicial as to cause a mistrial or new trial." *Breit*, 1996-NMSC-067, ¶ 33.

{37}    After lunch, Seeger renewed the motions for mistrial or continuance. At this moment in the trial, the judge's conduct became "so unfairly prejudicial to

15

[Defendant] that it [could not] be cured by means short of a mistrial or a motion for a new trial." *Breit*, 1996-NMSC-067, ¶ 32. This time, Seeger told the judge what was on the CD: statements from Defendant and the State's two witnesses who testified that morning. At this time, the judge knew that there was no meaningful adversarial testing of the State's case, that Defendant was denied his right to effective cross-examination, that the State misled the court by declaring that it would not use the CD but then calling two witnesses whose prior statements were on the CD, and that Seeger had no role in the State's failure to provide the CD less than a week prior to trial. The judge's denial of a continuance under these circumstances was unfairly prejudicial to Defendant.

{38} These facts are similar to those in *Salazar*—there had been no previous continuances, the defense was not at fault for causing the delay, and the late discovery provided by the State prejudiced defense counsel's cross-examination of witnesses—but here we also have a headstrong attorney refusing to participate in a criminal trial. *Salazar*, 2007-NMSC-004, ¶¶ 7, 21-23. Yet, despite the *Torres* factors weighing in favor of granting a continuance and allowing Defendant to develop a defense, the judge—equally obstinate—remained resolute in maintaining the trial docket. It was at this point in the trial that the judge had an affirmative obligation to do something: grant a continuance, declare a mistrial, or impose sanctions. However, the judge failed to undertake any measures to protect the constitutional rights of Defendant and the integrity of the court. *See Grogan*, 2007-NMSC-039, ¶ 10 ("[I]n

16

cases of obvious ineffective assistance of counsel, the trial judge has the duty to maintain the integrity of the court, and thus inquire into the representation."); *see also Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) ("The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court.").

{39} Returning to *Breit*, the judge's decision to allow the trial to proceed in light of the facts before him was conduct so unfairly prejudicial to Defendant that it could not be cured short of a mistrial or new trial. We conclude that the first prong of the *Breit* analysis is satisfied.

{40} Before turning to the second *Breit* prong, we take this opportunity to note that our determination that the judge's conduct was improper and unfairly prejudicial to Defendant should in no way be construed as a validation of Seeger's actions. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984) ("[A] counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."), *superseded on other grounds by statute*, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214; *see also Martin v. Rose*, 744 F.2d 1245, 1250-52 (6th Cir. 1984) (concluding that defense counsel's decision to "abandon all attempts to defend his client at trial" was a "bizarre and irresponsible stratagem" that amounted to constitutional error). "[A]ttorneys in New Mexico are not empowered with decisional autonomy regarding when trials commence and when they do not

17

commence. District courts are." *Hildreth*, 2019-NMCA-047, ¶ 16. Seeger had an obligation to preserve the record with a focus on the specific facts in support of a continuance and to demonstrate how the denial of the continuance was prejudicial to Defendant, while not abdicating his role as Defendant's attorney. *See Salazar*, 2007-NMSC-004, ¶¶ 15-16 (factors to be considered when "evaluating a trial court decision granting or denying a motion for continuance").

{41} That said, we echo the guidance offered to our district courts by the Court of Appeals as to how to respond when an attorney is threatening to withdraw from participation in a criminal trial. "[T]he district court can order new counsel to represent the defendant," it can "impose a sanction on the culpable attorney while at the same time granting a continuance," or, should "the attorney still refuse[] to participate in the face of a clear order to do so, the court can invoke its contempt powers against the obstructionist attorney." *Hildreth*, 2019-NMCA-047, ¶ 16. Additionally, the court could "question the defendant to determine whether he [or she] understands the implications and consequences of the attorney's proposed tactic and agrees to waive his [or her] right to effective assistance of counsel at trial." *Martin*, 744 F.2d at 1251-52; *see State v. Chapman*, 1986-NMSC-037, ¶ 10, 104 N.M. 324, 721 P.2d 392 ("[T]he trial court must determine if a defendant is making a knowing and intelligent waiver of counsel and fully understands the dangers of self-representation.").

18

## 2.    The second *Breit* prong

{42}    The second prong of the *Breit* test focuses on the effect of the official's conduct on the defendant, "regardless of the [official's] intent," to determine whether the official knows that its conduct is improper. *McClaugherty*, 2008-NMSC-044, ¶ 26. As we stated in *McClaugherty*, "[w]e cannot overemphasize or overstate that this is an objective standard, not a subjective one: the belief of the [official] regarding his or her own conduct is irrelevant in this analysis." *Id.* ¶ 27. "[T]here must be a point at which lawyers [and judges] are conclusively presumed to know what is proper and what is not." *Id.* ¶ 49 (first alteration in original) (internal quotation marks and citation omitted). Or said another way, "*Breit*'s knowledge test [is] satisfied by presuming knowledge on the part of" the official if the rule is of the kind "that every legal professional, no matter how inexperienced, is charged with knowing." *Id.* ¶¶ 49-50 (internal quotation marks and citation omitted). Under this standard, the law presumes that the judge here knew "that [counsel's] conduct [was] improper and prejudicial." *Breit*, 1996-NMSC-067, ¶ 32.

{43}    We again focus on the motion for mistrial or continuance following the lunch break. By this time, Seeger's inaction had created a "presumption of prejudice" against Defendant because there had been no meaningful adversarial testing of the prosecution's case or effective cross-examination. *Hildreth*, 2019-NMCA-047, ¶ 14. The concept that there is a "presumption of prejudice" to a defendant in such circumstances is not new to New Mexico. *See Grogan*, 2007-NMSC-039, ¶ 12

19

(including lack of meaningful adversarial testing of the prosecution's case and effective cross-examination as circumstances under which there is a presumption of prejudice to a defendant (citing *Cronic*, 466 U.S. at 659 (internal quotation marks and citation omitted))). Further, this is no subtle point of law—effective assistance of counsel requires more than an attorney simply being present at trial. *See Cronic*, 466 U.S. at 659 ("[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then . . . the adversary process itself [is] presumptively unreliable."). Given the judge's knowledge of Seeger's inaction, coupled with the new information relayed to the judge that the CD contained statements from the State's two witnesses who had testified the morning of the trial as well as Defendant and our case law regarding when prejudice is presumed and when it is an abuse of discretion to deny a continuance, we know of no calculus by which to justify the judge's refusal to grant a continuance, mistrial, or sanctions— let alone allow the trial to proceed to its end.

{44}   We conclude that the law clearly presumes that the judge knew it would be improper to proceed with trial under the circumstances. The second prong of *Breit* is met.

### 3.   The third *Breit* prong

{45}   We conclude that the judge acted "in willful disregard of the resulting mistrial, retrial, or reversal" by allowing the trial to proceed under the circumstances. *Breit*, 1996-NMSC-067, ¶ 32. When analyzing the third prong of *Breit*, the appellate court

20

"will carefully examine the [official's] conduct in light of the totality of the circumstances of the trial," and determine whether the conduct amounts to "willful disregard of the resulting mistrial, retrial, or reversal." *Id.* ¶ 40. In *Breit*, we defined "willful disregard" as "a conscious and purposeful decision by the [official] to dismiss any concern that his or her conduct may lead to a mistrial or reversal," while "emphasizing that the [official] is actually aware, or is presumed to be aware, of the potential consequences of his or her actions." *Id.* ¶ 34 (internal quotation marks omitted).

{46}     The State argues that the judge did not act in willful disregard of a possible reversal because he gave Seeger every opportunity to participate. The State contends that even if the judge knew of Seeger's intention to not participate at trial, he could not take Seeger's "threat to violate his client's constitutional rights at face value." The State asserts that after witnessing Seeger refuse to participate in jury selection, the judge "could have reasonably assumed that, once trial began in earnest, Seeger would fulfill his duty to represent Defendant." We are not persuaded.

{47}     The totality of the trial demonstrates that the judge made a "conscious and purposeful decision" to proceed with trial despite any concern that his conduct may result in reversal. *Breit*, 1996-NMSC-067, ¶ 34. The State's argument that the judge did not know whether Seeger would represent his client "once trial began in earnest," neglects the fact that the judge had witnessed Seeger fail to participate in voir dire,

21

juror challenges, opening statement, and witness examination by the time Seeger made his second motion for mistrial.

{48} Additionally, the judge acknowledged the likelihood of a reversal on appeal when he stated that Defendant "would have . . . excellent grounds for appeal on incompetency of counsel," if Seeger did not participate. And after lunch, it became clear that it was not just that Defendant had been denied effective assistance of counsel, but that Defendant had also been prejudiced by the State's late disclosures. The judge is presumed to be aware that by continuing with a trial where Defendant was not represented and where Defendant was prejudiced by the State's late disclosures, the result "may lead to a mistrial or reversal." *Breit*, 1996-NMSC-067, ¶ 34. Again, this is no "subtle point of law, and one we can presume any . . . attorney [or judge] to know." *McClaugherty*, 2008-NMSC-044, ¶ 65 (internal quotation marks and citation omitted).

{49} Accordingly, we conclude that under the narrow facts of this case, the judge acted in willful disregard of the resulting reversal thus satisfying the third prong of *Breit*. Retrial is barred.

## III.   CONCLUSION

{50} We affirm the Court of Appeals' reversal of Defendant's conviction, reverse the Court of Appeals' determination and application of *Breit*, and remand to the district court for further proceedings in accordance with this opinion.

{51}   **IT IS SO ORDERED**.

22

**MICHAEL E. VIGIL, Chief Justice**

**WE CONCUR:**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**

23